IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIM YOUNG, RONALD JOHNSON, and WILLIAM JONES, on behalf of themselves and a class of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 06 C 552 |
| COUNTY OF COOK, MICHAEL SHEAHAN, individually and in his official capacity as Sheriff of Cook County, CALLIE BAIRD, individually and in her official capacity as former Director of the Cook County Department of Corrections, SCOTT KURTOVICH, individually and in his official capacity as Director of the Cook County Department of Corrections, KAREN SCOTT, individually and in her official capacity as former Chief Operating Officer of the Cook County Department of Public Health, STEPHEN MARTIN, JR., individually and in his official capacity as Chief Operating Officer of the Cook County Department of Public Health, RUTH ROTHSTEIN, individually and in her official capacity as former director of the Cook County Bureau of Health Services, DANIEL WINSHIP, individually and in his official capacity as director of the Cook County Bureau of Health Services, LEONARD BERSKY, individually and in his official capacity as former Chief Operating Officer of Cermak Health Services of Cook County, and DAVID FAGUS, individually and in his official capacity as Chief Operating Officer of Cermak Health Services of Cook County, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Kim Young, Ronald Johnson, and William Jones have sued Cook County; three of its current employees, Stephen Martin, Jr., Daniel Winship, and David Fagus; three of its former employees, Karen Scott, Ruth Rothstein, and Leonard Bersky; Michael Sheahan, the Cook County Sheriff; and two of his current employees, Callie Baird and Scott Kurtovich.[1] Plaintiffs bring their suit under 42 U.S.C. § 1983, alleging that the defendants violated their Fourth and Fourteenth Amendment rights while they were incarcerated in the Cook County Jail (CCJ). The Cook County defendants and the Sheriff defendants have filed separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies the Cook County defendants' motion in part and grants it in part and denies the Sheriff defendants' motion.

## Facts

According to plaintiffs' second amended complaint, Sheriff Sheahan and two of his high level staff members, Callie Baird and Scott Kurtovich, have "implemented, enforced, and/or condoned" a policy of strip searching every inmate that enters the CCJ. Second Am. Compl. ¶¶ 16-17. This policy allegedly continues despite the fact that for more than twenty years, numerous courts – including the Seventh Circuit – have held that suspicionless strip searches of detainees accused of minor offenses are unconstitutional.[2] Plaintiffs also allege that the

---

[1] Cook County and its former and current employees are collectively referred to as the "Cook County defendants." Sheahan and his employees are collectively referred to as the "Sheriff defendants."

[2] *See, e.g.*, *Shain v. Ellison*, 273 F.3d 56, 64-66 (2d Cir. 2001); *Wilson v. Jones*, 251 F.3d 1340, 1343 (11th Cir. 2001); *Roberts v. Rhode Island*, 239 F.3d 107, 111 (1st Cir. 2001); *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir. 1983); *Tinetti v. Wittke*, 620 F.2d 160, 161 (7th Cir. 1980); *Calvin v. Sheriff of Will County*, 405 F. Supp. 2d 933, 942 (N.D. Ill. 2005).

individual defendants have "implemented, enforced, or condoned" a policy requiring all female inmates to undergo unconsented sexual transmitted disease (STD) testing. *Id.* ¶¶ 16-20.

Young claims that on January 13, 2005, she was arrested on an outstanding traffic warrant and taken to the CCJ. Shortly after arriving there, a female guard made her stand behind a partition, take her clothes off, squat down, and cough. Young put her clothes back on, and the guard led her, along with thirty other women, to a hallway lined with chairs. There, the women waited while they took turns going into a small room for STD testing. When Young's name was called, she entered the room, and a woman ordered her to remove her clothes a second time. Young asked why she was being examined, but the woman simply instructed her to "get on the table." Young followed the woman's order and put her feet in stirrups. The woman then inserted a probe into Young's vaginal cavity. Young claims that she did not consent to the strip search or the STD testing.

Johnson claims that on April 18, 2005, he was arrested for felony possession of a controlled substance.[3] Shortly after he was booked in the CCJ, guards ordered him and one-hundred other men to strip naked in a hallway. The guards then instructed them to face a wall, bend over, and spread their buttocks with their hands, as the guards proceeded to visually inspect them. The men remained naked in each other's presence for more than thirty minutes, during which time the guards made comments that the men were unbathed and stank. The hallway was poorly ventilated, and the air reeked of body odor.

Plaintiff Jones claims that on December 30, 2005, he was arrested on an outstanding traffic warrant. Shortly after he was booked in the CCJ, he, like Johnson, was strip searched in a

---

[3] Johnson claims that he was not convicted of these charges.

hallway along with one-hundred other men. There was no heat in the hallway, and the temperature felt like it was less than fifty degrees Fahrenheit. The men were shivering during the approximately forty minute period they remained in the hallway. The hallway was poorly ventilated, and the air reeked of body odor. Jones alleges that the guards repeatedly poked fun at the men.

In Count 1, plaintiffs allege that the vaginal swabbing procedure performed on Young violated the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment.[4] In Count 2, they allege that the vaginal swabbing procedure performed on Young violated the Equal Protection Clause of the Fourteenth Amendment. In Count 3, plaintiffs allege that the strip searches performed on Johnson and Jones violated the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. In Count 4, plaintiffs allege that because jail officials strip searched Johnson and Jones in a group setting, but did not perform strip searches on similarly situated females in a group setting, the searches of the men violated the Equal Protection Clause of the Fourteenth Amendment. In Counts 5 and 6, plaintiffs allege that the strip searches performed on Jones and Young violated the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. Count 7 is a state law claim for respondeat superior liability against Cook County. Count 8 is a state law claim of indemnification against Cook County.

## Discussion

When considering a motion to dismiss, the Court reads the complaint liberally, granting

---

[4] Plaintiff's second amended complaint makes class-wide allegations, though the case has not yet been certified as a class action. For this reason, we recite the allegations of each count of the complaint as they pertain to each named plaintiff.

the motion only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that entitles him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). We accept the allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Cler v. Ill. Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir. 2005). Under federal pleading rules, a complaint "need not set out legal theories or comprehensive factual narratives." *See, e.g., Rapid Test Prods., Inc. v. Durham School Svcs., Inc.*, No. 05-4066, — F.3d — , 2006 WL 2382430, at *2 (7th Cir. Aug. 18, 2006).

Together, the defendants' motions propose seven different reasons for partial or complete dismissal of plaintiffs' claims. We consider each argument in turn.

### 1. The individual defendants' involvement

The individual defendants (those other than Cook County) argue that the complaint fails to allege that they were personally involved in the claimed constitutional violations. An individual cannot be held liable under 42 U.S.C. § 1983 unless he caused or participated in an alleged constitutional deprivation. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Supervisors may not be held liable under this statute for negligently failing to prevent an employee from engaging in prohibited conduct. *See Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997). Rather, "'supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Id.* (quoting *Jones v. City of Chicago*, 865 F.2d 985, 992-93 (7th Cir. 1988)).

Plaintiffs sufficiently allege that the individual defendants were personally involved in the alleged constitutional violations. Specifically, they allege that the defendants "implemented, enforced, or condoned" the strip search and vaginal swabbing procedures at the CCJ. Second

5

Am. Compl. ¶¶ 16-20. In other words, they are claimed to have had knowledge that guards were performing strip searches and STD testing on all new detainees but failed to intervene. These allegations are sufficient to withstand a motion to dismiss. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (denying defendant's motion for summary judgment because plaintiff offered evidence that the defendant knew that guards were denying the plaintiff constitutionally required writing materials but failed to intervene).

The individual Cook County defendants have also moved to dismiss the claims made against them in their official capacity, arguing these claims are redundant of the claims asserted against Cook County. *See DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 975 (7th Cir. 2000) ("An official capacity suit is the same as a suit against the entity of which the officer is an agent."). Because the plaintiffs do not respond to this argument, they are deemed to have conceded the point. Accordingly, the Court dismisses the official capacity claims against Martin, Jr., Winship, Fagus, Scott, Rothstein, and Bersky.

### 2. Unwanted medical testing under the Fourth and Fourteenth Amendments

The Cook County defendants argue that the Court should dismiss Count 1 of the second amended complaint because the vaginal swabbing procedure, as alleged, did not violate Young's Fourth or Fourteenth Amendment rights. Defendants do not dispute that the vaginal swabbing procedure – if Young did not consent to it – constitutes unwanted medical treatment. Nor do defendants deny that Young has a Fourteenth Amendment liberty interest in refusing unwanted medical treatment. *See Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 278 (1990). Rather, defendants argue that they cannot be held liable for the test because if it was performed without Young's consent, they were merely negligent in not recognizing the involuntary nature

6

of the procedure. They point out that allegations of negligence ordinarily are not enough to establish liability under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

Young has alleged that the CCJ has a policy of requiring "all women" to undergo the vaginal swabbing procedure and that the circumstances of the swabbing procedure are "coercive." Second Am. Compl. ¶ 2. She also claims that if an inmate refuses or asks a question about the procedure, the guards may use physical force on her or instruct her to perform the procedure without answering her question. *See id.* ¶¶ 4-5. Finally, Young has alleged that the defendants "implemented, enforced, or condoned the use of procedures challenged in this case." *Id.* ¶¶ 16-20. If Young proved that the defendants implemented or condoned a policy requiring each female inmate to undergo a vaginal swabbing procedure whether she consented or not, a jury reasonably could find the defendants were more than negligent in recognizing that the testing violated the inmates' Fourteenth Amendment rights. Indeed, these allegations, if taken as true (as the Court must do at this stage of the case), suggest that the defendants knowingly implemented or condoned a policy of coercing women to take the test or, worse, of forcing women to take the test despite their outright refusal.

The Cook County defendants also argue that the swabbing procedure does not violate the Fourth Amendment because it is not a search. As far as the Court can ascertain, it is an open question whether the Fourth Amendment's prohibition against unreasonable searches applies to medical procedures, executed by government actors, that are unrelated to evidence gathering. At least one court has said that the Fourth Amendment applies only to conduct "motivated by some sort of investigatory or administrative purpose designed to elicit a benefit for the government." *United States v. Attson*, 900 F.2d 1427, 1430 (9th Cir. 1990). It does not appear, however, that

7

either the Supreme Court or Seventh Circuit have spoken directly on the issue.[5] Regardless, we need not delve into this issue on a motion to dismiss, having already concluded that Count 1 states a claim under the Fourteenth Amendment. First, allowing the Fourth Amendment claim to go forward does not substantially alter the scope of discovery, if at all. Second, if, as *Attson* suggests, the resolution of this issue turns on the government's motivation for performing the alleged procedure, then it is impossible at this stage of the litigation to determine what that motivation may have been. For these reasons, Count 1 states a claim for which relief may be granted, and the Court declines to dismiss Young's Fourth Amendment claim.

3. **Cook County's control over the Sheriff**

Cook County argues that it cannot be held liable for the acts of the Sheriff because the Sheriff "is an independently elected constitutional officer who answers to the electorate, not the County government." *See* County Mem. at 17-18. Cook County cites *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989), for the proposition that it cannot be held vicariously liable for the acts of the Sheriff. It ignores, however, the Seventh Circuit's more recent pronouncement on the issue, which holds that in Illinois, the county is a necessary party to a suit for damages against the sheriff. *See Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003) ("[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity."); *see also Robinson v. Sappington*, 351 F.3d 317, 338-39 (7th Cir. 2003) (rejecting Macon County's

---

[5] In *Sullivan v. Bornemann*, 384 F.3d 372, 377 (7th Cir. 2004), the court held that the Fourth Amendment does not prohibit a police officer from briefly restraining a detainee at the direction of qualified medical personnel for the purpose of benefitting the detainee's own health. The case does not address, however, whether the Fourth Amendment applies to the medical procedure itself.

argument that it should be dismissed from the plaintiff's lawsuit alleging that her employer, a circuit court judge, sexually harrassed her, because Macon County would be required to pay any judgment).

### 4. Strip search performed on Johnson

The Sheriff defendants argue that the Court should dismiss Johnson's Fourth Amendment claim because a number of courts have held that jail officials may strip search detainees accused of felonies or drug crimes.[6] *See, e.g., Dufrin v. Spreen*, 712 F.2d 1084, 1089 (6th Cir. 1983) (holding that a strip search of a detainee accused of felonious assault does not violate the Fourth Amendment); *Doe v. Berberich*, 704 F. Supp. 269, 272 (D.D.C. 1988) (holding that a strip search of a detainee accused of misdemeanor possession of marijuana does not violate the Fourth Amendment). The problem with the cases that the defendants cite, however, is that Johnson does not dispute that a policy of strip searching accused felons is legal when the search is conducted in a reasonable manner. Rather, he contends that jail officials searched him in a fashion that was unnecessarily abusive and humiliating.

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court said that the test of reasonableness under the Fourth Amendment involves the consideration of four different factors: the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.* at 559. Examining these factors in the context of strip searches conducted after contact visits on pretrial detainees accused of serious

---

[6] The Sheriff defendants have also moved to dismiss the plaintiffs' class allegations, arguing that the proposed classes include accused felons who can lawfully be strip searched during the booking process. The Court declines to address the propriety of the alleged classes, however, because this objection is premature. The plaintiffs have not yet filed a motion for class certification.

felonies, the Court said that "[a] detention facility is a unique place fraught with serious security dangers" and that smuggling of contraband is a real and serious concern for jail administrators. *Id.* Though recognizing as well the significant invasion of privacy that strip searches entail, the Court held that post-contact visit strip searches did not violate the Fourth Amendment. *Id.* at 560. The Court cautioned, however, that searches carried out in an abusive fashion cannot be tolerated. *Id.*

In this case, we recognize that the scope of a strip search necessarily compromises a particularly serious privacy interest. As for the second and fourth *Bell* factors, Johnson's complaint alleges a number of facts that suggest unreasonableness: the use of threatening or harassing language, *see Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005), the lack of privacy, including the fact that many others could see Johnson's naked body, *see Amaechi v. West*, 237 F.3d 356, 364 (4th Cir. 2001); *Del Raine v. Williford*, 32 F.3d 1024, 1040 (7th Cir. 1994), the significant amount of time it took to complete the search, and the fact that the search took place in a crowded, odorous, poorly-ventilated hallway.

Balanced against these factors is the government's justification for initiating the search. The defendants, citing a report from the John Howard Association, assert that the strip searches are justified to combat "serious security dangers" at the CCJ. *See* Sheriff Mem. at 10. The Court is not permitted, however, to consider these reports on a motion to dismiss for failure to state a claim. Even if we were, Johnson specifically alleges that the Sheriff did not have sufficient justification for the strip search procedures. *See* Second Am. Compl. ¶ 81. Taking these allegations as true and balancing them with the facts relevant to our consideration of the other three *Bell* factors, Johnson's strip search allegations state a claim on which relief may be

granted. In short, without the benefit of evidence concerning the Sheriff's need to conduct strip searches in the manner performed, the Court cannot determine whether the search performed on Johnson was conducted in a reasonable fashion. For these reasons, Johnson's strip search allegations state a claim on which relief may be granted.

### 5. Finding of probable cause to arrest

The Sheriff defendants also argue that the Court should dismiss the defendants Fourth Amendment claims because each pretrial detainee arrives at the CCJ after a judicial officer has found that probable cause exists to arrest and detain that individual. The Sheriff defendants contend that reasonable suspicion to strip search the detainee is inherent in a judge's probable cause finding. The Court rejects the argument. We fail to see how a finding of probable cause to arrest suggests reasonable suspicion that an individual is concealing contraband, particularly where the relevant finding is that an individual has allegedly committed a non-violent, non-drug related misdemeanor or has failed to appear for a hearing in traffic court. *See Shain v. Ellison*, 273 F.3d 56, 65 (2d Cir. 2001) (holding that arraignment of person accused of misdemeanor does not suggest that the person is concealing contraband or weapons).

### 6. The *Duran* consent decree

The Sheriff defendants next argue that the Court should dismiss this case in its entirety because it is barred by the doctrine of issue preclusion. They state that "the issue of living conditions and treatment of pretrial detainees at the Cook County Jail was decided by the district court in *Duran* [*v. Sheahan,* Case No.74 C 2949]." Sheriff Mem. at 13. This argument is lacking in merit for several reasons.

First, as the Sheriff defendants themselves note, issue preclusion "generally prevents a

11

party from relitigating an issue that has already been litigated." *Id.* (citing *Appley v. West,* 832 F.2d 1021, 1025 (7th Cir. 1987)). *Duran,* however, was resolved not by way of litigation and decision, but by a consent decree – a negotiated resolution approved by the presiding judge. Because the issues underlying consent judgments ordinarily are not actually litigated, such judgments normally do not support issue preclusion. *Arizona v. California,* 530 U.S. 392, 414-15 (2000); *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir. 1990).

Second, the Sheriff defendants' contention that the particular issues involved in the present case were also at issue in *Duran* is utterly unsupported and borders on the frivolous. Their argument is that because *Duran* concerned "the treatment and living conditions of pretrial detainees," it necessarily included the intake procedures at issue in this case. Sheriff Mem. at 14. This argument completely misunderstands the doctrine of issue preclusion, which requires the *idenitical issue* involved in the current suit to have been actually litigated, decided by a court on the merits, and necessary to the court's judgment. *See Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995). The Sheriff defendants have not even attempted to show that strip searching of detainees at intake or vaginal swabbing of female detainees was so much as discussed with the court prior to its approval of the *Duran* decree, let alone that those issues were disputed, litigated, or decided.

In any event, though it is true that *Duran* is claim-preclusive as to all pretrial detainees in the CCJ, including current detainees, *see Martin v. Davies,* 917 F.2d 336, 339 (7th Cir. 1990), it bars only claims by detainees for equitable relief that was sought in *Duran*. *Id.* at 340. The Sheriff defendants argue only issue preclusion, not claim preclusion, but we address the issue of

12

claim preclusion to avoid the need to deal with it as the case progresses. The *Duran* decree addresses overcrowding, food quality, personal hygiene, visiting privileges, law library access, and detainee exercise. *See Duran v. Elrod,* 760 F.2d 756,760 (7th Cir. 1985). The Sheriff defendants have not pointed to any part of the *Duran* consent decree that addresses anything like the intake strip search and vaginal swabbing procedures that are at issue in this case. As a result, *Duran* does not preclude the present plaintiffs' claims for injunctive relief – if they are actually making such claims, which is not entirely clear. *See Richardson v. Ala. State Bd. of Educ.,* 935 F.2d 1240, 1245-46 (11th Cir. 1991) (holding that application of claim preclusion and issue preclusion doctrines was improper where consent decree addressed the discriminatory nature of a teacher certification test and second suit addressed the non-renewal of teacher contracts); *New Orleans Steamship Ass'n v. EEOC,* 680 F.2d 23, 25-26 (5th Cir. 1982) (holding that application of claim preclusion was improper where consent decree addressed racially discriminatory testing techniques and second suit addressed an allegedly discriminatory ranking procedure applied to those who had achieved a passing score on the test). In addition, the Seventh Circuit has made it clear that *Duran* has no claim-preclusive effect as to later claims for damages. *See Martin,* 917 F.2d at 340.

Finally, defendants suggest that the Court should transfer this case to our colleague, the Honorable George M. Marovich, who presides over the *Duran* case. Defendants have provided no basis to grant such a request. There is no question that Judge Marovich's supervision of the *Duran* consent decree requires him to have intimate knowledge of the workings of the jail and other related issues. But that does not mean that anything that touches upon the operation of the jail is necessarily within the purview of the *Duran* case. Were the Sheriff defendants' proposal

13

taken to its logical conclusion, every case filed in this District that involved events at the CCJ would be subsumed by *Duran* and transferrable to Judge Marovich, an obviously unsupportable result. For this reason, and because the defendants have offered no authority supporting their request for transfer, the Court denies the request.

       **7.**      **Sheriff's control over operations at Cermak Hospital**

The Sheriff defendants argue that they cannot be held liable for the vaginal swabbing procedures conducted by Cermak Health Services employees because "Sheahan has no employment relationship with Cermak[,] and Sheahan does not control Cermak or the Cook County Bureau of Health." Sheriff Mem. at 16. This is not a basis for dismissal for failure to state a claim. As discussed earlier, plaintiffs allege in the second amended complaint that the Sheriff defendants instituted or condoned the vaginal swabbing procedure and had authority to terminate it but failed to do so. *See Duckworth*, 65 F.3d at 561. Though the plaintiffs may ultimately be unable to prove these allegations, at this point in the litigation, the allegations are sufficient to withstand the defendants' motion to dismiss.

**Conclusion**

For the foregoing reasons, the Court denies the Sheriff defendants' motion to dismiss [docket no. 34]. The Court grants the Cook County defendants' motion to dismiss [docket no. 38] to the extent it seeks dismissal of official capacity claims against Martin, Jr., Winship, Fagus, Scott, Rothstein, and Bersky, but we otherwise deny the motion. The defendants are directed to answer all remaining claims by September 15, 2006. The case is set for a status hearing on

14

September 7, 2006 at 9:30 a.m. for the purpose of setting a discovery schedule.

                                                                _____
                                                                           MATTHEW F. KENNELLY
                                                                        United States District Judge

Date:   August 25, 2006