**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KIM YOUNG, RONALD JOHNSON, and WILLIAM JONES, on behalf of themselves and a class of others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 06 C 552 |
| COUNTY OF COOK, et al., | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Kim Young, Ronald Johnson, and William Jones have sued the Sheriff of Cook County, certain high ranking Sheriff's employees, Cook County, and certain Cook County employees. Plaintiffs allege that the defendants violated plaintiffs' Fourth and Fourteenth Amendment rights while they were confined as pretrial detainees at the Cook County Jail (CCJ). Plaintiffs have moved to certify two classes pursuant to Federal Rule of Civil Procedure 23(b)(3). For the reasons stated below, the Court grants plaintiffs' motion.

**Facts**

In their second amended complaint, plaintiffs allege that the Sheriff and certain Sheriff's Department personnel "implemented, enforced, and/or condoned" a policy of strip searching every detainee that enters the CCJ, irrespective of the nature of the charge against the detainee. 2d Am. Compl. ¶¶ 16-17. They contend that suspicionless strip searches of detainees accused of misdemeanors and other minor offenses are unconstitutional. Plaintiffs also allege that the searches of male detainees were conducted in a degrading manner that was significantly different

than the manner in which females were searched.

Young alleges that on January 13, 2005, she was arrested on an outstanding traffic warrant and taken to the CCJ. Shortly after arriving there, a female guard made her stand behind a partition, take her clothes off, squat down, and cough. Young put her clothes back on, and the guard led her, along with thirty other women, to a hallway lined with chairs, where the women waited while they took turns going into a small room for STD testing. Young claims that she did not consent to the strip search or the STD testing. Briefing on plaintiffs' request to certify a class on their claims relating to the STD testing is being handled separately.

Johnson alleges that on April 18, 2005, he was arrested for felony possession of a controlled substance. Shortly after he was booked in the CCJ, guards ordered him and one-hundred other men to strip naked in a hallway. The guards then instructed them to face a wall, bend over, and spread their buttocks with their hands, as the guards proceeded to visually inspect them. The men remained naked in each other's presence for more than thirty minutes, during which, Johnson contends, the guards made comments that the men were unbathed and stank. He alleges that the hallway was poorly ventilated and that the air reeked of body odor.

Jones alleges that on December 30, 2005, he was arrested on an outstanding traffic warrant. He says that shortly after he was booked in the CCJ, he was strip searched in a hallway along with one hundred other men. According to Jones, there was no heat in the hallway, the temperature felt like it was less than fifty degrees Fahrenheit, and the men were shivering during the approximately forty minute period they remained in the hallway. The hallway was poorly ventilated, and the air reeked of body odor. Jones alleges that the guards repeatedly poked fun at the men.

Plaintiffs contend that the strip searches performed on Johnson and Jones were conducted in a manner violative of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. They also allege that because jail officials strip searched Johnson and Jones in a group setting but did not perform strip searches on similarly situated females in a group setting, the searches of the men violated the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs also contend that in view of the nature of the charges against Jones and Young, it violated the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to strip search them. Plaintiffs have also made state law respondeat superior and indemnification claims against Cook County.

The plaintiffs have moved the Court to certify two classes. The first proposed class consists of all males who were, on or after January 30, 2004, subjected as new CCJ detainees to a strip search (a term the Court will use to cover both strip searches and visual body cavity searches). The second proposed class consists of all males and females detained for misdemeanor or lesser offenses not involving drugs or weapons who were subjected to a strip search as new CCJ detainees on or after January 30, 2004.

## Discussion

Federal Rule of Civil Procedure 23 authorizes a court to certify a case as a class action if the party seeking certification meets all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b). Under Rule 23(a)(1)-(4), a plaintiff seeking certification of a class bears the burden of proving that the class is so numerous that joinder of all members is impracticable; there are common questions of law or fact; the representatives' claims are typical of those of the class; and the representatives fairly and adequately protect the interests of the

class. FED. R. CIV. P. 23(a).

Once a party satisfies the requirements of Rule 23(a), she must meet one of the requirements delineated in Rule 23(b). In this case, plaintiffs seek certification under Rule 23(b)(3). As a result, they must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and [that] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Plaintiffs "assume[] the burden of demonstrating that [class] certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

**1.     Rule 23(a) requirements**

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Courts may rely on common sense assumptions or reasonable inferences as to the size of a class. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). The plaintiff is not required to show the exact number of class members so long as impracticability is apparent from good faith estimates. *Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 31415767, at *4 (N.D. Ill. Oct. 25, 2002). Mere speculation, however, is insufficient to prove numerosity. *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990) (citations omitted).

Rule 23(a)(2) requires the existence of questions of law or fact common to the class, and Rule 23(a)(3) requires that the class representatives' claims be typical of those of the class. These requirements are closely related. *See General Telephone Co. v. Falcon*, 457 U.S. 147, 156 (1982). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting

4

*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common set of operative facts is ordinarily present when the defendants are claimed to have engaged in "standardized conduct toward the members of the proposed class." *Id.*

The typicality requirement of Rule 23(a)(3) focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n*, 7 F.3d at 596-97. "A plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotation omitted). Factual distinctions between the claims of the named and represented plaintiffs do not defeat typicality. *See Retired Chicago Police Ass'n*, 7 F.3d at 596-97. The claims of the named plaintiffs must, however, have "the same essential characteristics" as those of the proposed class. *See id.* at 597.

Rule 23(a)(4) requires that the named plaintiffs fairly and adequately represent the class as a whole. To fulfill this requirement, both class counsel and the class representatives must be adequate. *See id.* at 598. A named plaintiff is generally considered to be adequate so long as his or her claims neither conflict with nor are antagonistic to those of other class members. *See id.*; *Rosario*, 963 F.2d at 1018.

    **a.**    **Numerosity**

Proposed class one consists of all males who were, as new CCJ detainees, subjected to a strip search at any time on or after January 30, 2004. Since the beginning of the class period, approximately 250,000 men have been processed and searched at the CCJ's Receiving Classification and Diagnostic Center ("RCDC"). Plaintiffs allege that strip searches of new male

detainees were conducted in the same manner throughout the class period. Given the immense number of male detainees processed and searched in the same manner, proposed class one fulfills the numerosity requirement of Rule 23(a)(1).

Proposed class two consists of all males and females charged with misdemeanor or lesser offenses not involving drugs or weapons who were subjected to a strip search as new CCJ detainees on or after January 30, 2004. Plaintiffs sought database discovery from the Cook County Sheriff's Department ("Department") to determine the size of this proposed class. The Department claimed that it could not extract the information from its computers and has not provided information on the database system enabling plaintiffs to determine if they can extract the information themselves. As a result, plaintiffs have not yet received sufficient discovery to prove the exact size of proposed class two.

From publicly available data, however, plaintiffs discovered that seventeen persons encompassed within proposed class two were admitted to the jail over a four-day period in January 2007. Plaintiffs contend that by extrapolating this figure over the class period, it is obvious that the members of the proposed class are sufficiently numerous that their joinder as individual parties would be impracticable. The Court agrees; plaintiffs' analysis is rooted in common sense, not speculation. *See Lopez*, 2002 WL 31415767, at \*4 (holding that plaintiffs "need not demonstrate the exact number of class members" as long as a court can draw a conclusion as to numerosity based on plaintiffs' good faith estimates).

Certain of the defendants argue that there is no "identifiable" class, but their actual argument seems to be that the strip searches conducted on incoming detainees are justified and should be declared legal. *See* Sheahan Resp. at 7-9. That is not an appropriate inquiry on a

motion for class certification. In *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001), the Seventh Circuit made it clear that a court need not accept all of the allegations of the plaintiff's complaint in assessing whether to certify a class and "should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 675, 676. In this case, however, defendants' proffered justification for their strip search policy has nothing to do with whether the proposed classes are sufficiently numerous, whether their claims present common issues, whether the named plaintiffs' claims are typical of those of the class, whether the named plaintiffs are adequate class representatives, or whether the requirements of Rule 23(b) have been met. Thus inquiry into the merits is not, in the words of *Szabo*, "necessary under Rule 23" to determine the appropriateness of class certification.

Nor does the Court read *Szabo* as saying that it is appropriate to deny class certification – in the absence of a meritorious motion to dismiss or motion for summary judgment – on the ground that the plaintiff is likely to lose the case. And even if *Szabo* were read that way, it would be particularly unjust and inappropriate to apply such a rule in this case. All parties agreed to defer "merits" discovery pending the completion of class discovery and determination of plaintiffs' class certification motion. Allowing defendants to defeat class certification by arguing that the evidence demonstrates that the policy of strip searching all new detainees is justified (a contention that, in any event, only addresses the claims of proposed class two) would amount to requiring the plaintiffs to fight blindfolded, standing on one leg, with their hands tied behind their backs. The issue is more appropriately addressed at a later stage of the case.

    b.    **Commonality and typicality**

Plaintiffs contend that the claims of each of the proposed classes present common

questions of law and fact and that the named plaintiffs' claims are typical of those presented by their fellow class members. Defendants argue that proposed class one is not viable because it includes men charged with all types of crimes with varied criminal histories. Defendants argue that this class definition is unworkable because it includes, for example, detainees accused of felonies or drug crimes, who, defendants say, properly can be strip searched.

Defendants' argument misses the point. The claims of proposed class one concern not the propriety of conducting a strip search but rather the manner in which searches were conducted. In a nutshell, the claims of this class are that jail officials searched all men in an unreasonable and unnecessarily degrading manner and that the disparities between the search procedures for male and female detainees lack a substantial relationship to an important state purpose. In other words, the nature of the charges against particular detainees has no bearing (or, at most, a minimal bearing) on the claims of proposed class one.

To satisfy Rule 23(a)'s commonality requirement, a plaintiff need only show that there is at least one question of fact common to the class. *Dunn v. City of Chicago*, 231 F.R.D. 367, 372 (N.D. Ill. 2005). As a general rule, when "the defendants have engaged in standardized conduct towards members of the proposed class," the class meets Rule 23(a)'s commonality requirement. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). In this case, the claims of both proposed classes are premised upon contentions that the defendants acted pursuant to policies and standard practices that were common to all class members.

Courts have consistently held that class actions challenging blanket strip search policies satisfy Rule 23(a)(2)'s commonality requirement. *See*, *e.g.*, *Bullock v. Sheahan*, 225 F.R.D. 227, 229 (N.D. Ill. 2004) ("Plaintiffs allege that defendants' policy of strip searching male inmates

under the stated conditions violates their Fourth and Fourteenth Amendment rights. That issue is central to the claims of the proposed class; the commonality requirement is met."); *Calvin v. Sheriff of Will County*, No. 03 C 3086, 2004 WL 1125922, at *3 (N.D. Ill. May 17, 2004); *see also, Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1267 (7th Cir. 1983) ("Although the circumstances surrounding the arrests and detentions of each of the plaintiffs-appellees in these consolidated cases are not identical, the situations involve the following common elements: each woman was arrested for a misdemeanor offense and each was subjected to the strip search policy of the City of Chicago.").

The claims of proposed class one, which consists of male detainees, are that they were strip searched in a manner that affords no privacy from other detainees using search methods that are unreasonable and punitive and were treated in a way significantly different from female detainees without good reason. It can scarcely be questioned that the claims of the members of this proposed class have numerous issues in common.

The claim of proposed class two is that it is unreasonable and violative of the Constitution to strip search detainees who are charged only with misdemeanors or lesser offenses not involving weapons or drugs, absent some particularized suspicion that the particular detainee is hiding contraband. As with proposed class one, proposed class two challenges a standard policy of the CCJ (the existence of which, the Court notes, the defendants do not appear to dispute). Because both classes challenge what they characterize as standard policies and practices, common issues of fact and law permeate their claims.

A named plaintiff's claims are not atypical simply because there are "factual distinctions between ... [their claims] and those of other class members." *See De La Fuente*, 713 F.2d at 232.

Under Rule 23(a), the commonality and typicality requirements "tend to merge . . . [and] serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13. In this case, the named plaintiffs are challenging the same strip search policies and methods as the classes they seek to represent. The likelihood of some range of variation in how different groups of new detainees were treated does not undermine the fact that the claims of each class share a common factual basis and legal theory. *De La Fuente*, 713 F.2d at 232.

Defendants argue that the named plaintiffs' claims are not typical of those of the classes because some new detainees likely favor blanket strip searches because they result in confiscation of weapons and other items that might be used to harm them and because blanket searches may prevent some detainees from being victimized by others who might force them to conceal contraband. That may well be true, but it does not defeat the typicality of the named plaintiffs' claims. Among other things, because certification is sought only under Rule 23(b)(3), members of the class will be permitted to opt out of the litigation. If the results of the opt-out process reflect a sufficient degree of antagonism among class members to suggest an absence of the requisite typicality, numerosity, or other relevant factors, the Court will be open to reexamination of the issue of certification of proposed class two. (The proposition that some detainees may prefer blanket strip searches has little to do with the propriety of certifying proposed class one, whose claims concern the manner of conducting strip searches, not whether they should be conducted to begin with.)

For these reasons, the Court finds that the named plaintiffs' claims fulfill Rule 23(a)(3)'s

commonality and typicality requirements.

###   c.   Adequacy

Defendants do not dispute the adequacy of plaintiffs' counsel. The Court has no doubt that plaintiffs' counsel will be able to represent fairly the interests of the proposed classes.

Defendants argue that Jones and Young, the proposed representatives of class two, are inadequate representatives of that class because they were charged with felony offenses, not misdemeanors. A proposed class representative must be a member of the class she wishes to represent. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The evidence reflects, however, that like the other members of proposed class two, both Jones and Young were arrested on misdemeanor charges, not felonies. Specifically, Jones was arrested for driving on a suspended license, and Young was arrested for driving while her license was suspended or revoked, both of which are misdemeanors under Illinois law. *See* Pl. Reply at 4 & Exs. A & B; 625 ILCS 5/6-303(a). In short, based on the evidence presented, Jones and Young are members of the class.

Defendants point out that the CCJ's records appear to have stated that Jones and Young were charged with felonies. This gives rise to a legitimate question as to whether they are adequate class representatives; their individual claims may be subject to particularized defenses. *See J.H. Cohn & Co. v. Amer. Appraisal Assocs., Inc.*, 628 F.2d 994, 998-99 (7th Cir. 1980) (representative's claim may not be typical of those of the class – a requirement closely related to the adequacy of representation requirement – if it is likely to become a focus of the litigation). But this is far from apparent at this relatively early stage of the case, and the Court is unconvinced that any individual defenses are likely to be a significant focus of the case. That

said, as the case develops, the Court will not hesitate to reexamine this issue if asked and will, if it becomes appropriate, require substitute representatives for class two (and, if none are offered, will consider decertifying that class).

### d. Conclusion

For these reasons, the Court finds that both proposed classes satisfy the requirements of Rule 23(a).

### 2. Rule 23(b) requirements

Plaintiffs seek certification of both classes under Rule 23(b)(3), which requires the "court [to] find[] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

When a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation. *See, e.g., Falcon,* 457 U.S. at 147 n.20; *Calvin*, 2004 WL 1125922, at *4 (strip search case); *Blihovde v. St. Croix County*, 219 F.R.D. 607, 620 (W.D. Wis. 2003). Both proposed classes challenge what plaintiffs contend are uniform policies. The predominant focus of the litigation of proposed class one's claims is likely to involve the justifications for, and propriety of, non-private strip searches.

Defendants argue, with regard to proposed class one, that the reasonableness of the way strip searches were conducted must be determined on a case-by-case basis. They point out that groups of incoming detainees varied in size from day to day. There is also the potential that the specifics of what correctional officers said to detainees before or during the searches, the room

temperature, and other factors may have differed from day to day. Though these are valid points, the Court is persuaded that the predominant issues in the litigation of proposed class one's claims will concern the alleged lack of privacy and differences in the way male and female detainees were treated, not whether (for example) there were fifteen as opposed to eighty male detainees who came in on a particular date. In any event, from the limited evidence that plaintiffs have developed to date, there is a basis to believe that it was relatively common for correctional officers to make offensive comments to detainees. Thus, even if the specifics may have differed on different dates, there is no reason to believe that those sorts of particulars will become a major focus of the litigation.

With regard to proposed class two, it appears to be largely undisputed that the CCJ searches all incoming detainees, irrespective of the characteristics of the particular detainee or the nature of the charge against him. Defendants contend, however, that the Court will have to make an inquiry, individual to each class member, regarding whether the facts known to CCJ officials gave rise to a proper basis to conduct a search. This, defendants argue, precludes certification under Rule 23(b)(3). The Court disagrees. We can put it no better than our colleague Judge Robert Gettleman did in certifying a class of similar plaintiffs in a case involving the Will County Jail:

> Defendants misconceive the way in which reasonable suspicion factors into the class. Plaintiffs allege that under the uniform strip search policy adopted by the Sheriff, jail personnel never undertook reasonable suspicion or probable cause inquiries. Thus, the ultimate legal question is not whether jail personnel made erroneous reasonable suspicion determinations regarding each individual, but whether the Sheriff's policy avoided all such inquiry, thus depriving those individuals of their Fourth and Fourteenth Amendment rights. The question of the validity of the Sheriff's policy thus predominates over any "individualized questions."

13

*Calvin,* 2004 WL 1129522, at *4.

In sum, the Court finds that plaintiffs have established that common questions predominate over individual issues for both proposed classes.

The Court also finds that plaintiffs have shown that a class action is the superior method for pursuing plaintiffs' claims. From the standpoint of judicial economy, handling even a modest portion of the potential claims of detainees likely would overwhelm the docket in this District. This is a case in which "class action treatment is appropriate and [ ] permitted by Rule 23 [because] the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).

Defendants also argue that the superiority requirement is not met because the treatment of pretrial detainees at the CCJ is already subject to monitoring pursuant to a consent decree entered in the case of *Duran v. Sheahan*, Case No. 74 C 2949. They contend that "[p]laintiffs covered by a consent decree cannot bring claims for equitable relief outside of a contempt order initiated before [the] court [that issued the consent decree]." Sheahan Resp. at 14. The Court addressed this issue when it considered defendants' motion to dismiss. *See Young v. County of Cook*, No. 06 C 552, slip op. at 11-14 (N.D. Ill. Aug. 25, 2006). Defendants have made no new points in this regard, so the Court will summarize the pertinent portions of its earlier ruling. First, the contention that the issues in this case were at issue in *Duran* "is utterly unsupported and borders on the frivolous." *Id.* at 12. The defendants have made no effort to show that strip searching of detainees at intake "was so much as discussed with the court prior to its approval of the *Duran* decree, let alone that those issues were disputed, litigated, or decided." *Id.* Second,

defendants "have not pointed to any part of the *Duran* consent decree that addresses anything like the intake strip search . . . procedures that are at issue in this case." *Id.* at 13. As a result, the *Duran* decree does not preclude the proposed classes' injunctive relief claims, and the Seventh Circuit has held that the decree has no preclusive effect on claims for damages. *Id.* (citing *Martin v. Davies*, 917 F.2d 336, 340 (7th Cir. 1990)). In short, the contention that the claims in this case may be brought, if at all, only as part of the *Duran* case is entirely lacking in merit.

**3.     Cook County**

In its memorandum opposing class certification, Cook County argues, as it did in a motion to dismiss, that it cannot be held liable for the acts of the Sheriff. As the Court ruled, however, the County is a necessary party to this case. *Id.* at 8 (citing *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003), and *Robinson v. Sappington*, 351 F.3d 317, 338-39 (7th Cir. 2003)). In any event, the County's argument presents no basis to decline certification of the proposed classes.

**4.     Final points**

If anything "predominates" in this case, it is defendants' strenuous and repeated arguments whose apparent aim is to convince the Court that the plaintiffs are doomed to lose the lawsuit. *See, e.g.,* Sheahan Mem. at 3 & 6 (citing sixty-one instances in which strip searches revealed attempted smuggling), 4 (argument that there are good reasons for treating male detainees differently from females), 7-8 (arguing the legal validity of strip searches); Cook County Mem. at 6 (arguing that strip searches are legal), 11-14 (arguing that the search procedures are reasonable). These arguments are misplaced in the present context. As the Court has discussed, though it is appropriate to go behind the pleadings when necessary to assess the

factors for certification under Rule 23, none of these arguments actually concerns Rule 23's factors. Moreover, defendants *agreed* to defer discovery on the merits, and as a result plaintiffs are effectively precluded at this stage from responding to defendants' proffered justifications for the challenged policies. For those reasons, defendants cannot defeat class certification by arguing that plaintiffs are pursuing a losing cause.

If defendants want a decision on the merits – as seems to be the case – they should move for summary judgment. That will allow the Court to determine what discovery plaintiffs are entitled to take in order to address the merits. At the current stage of the litigation, however, a ruling that amounts to a decision on the merits of the plaintiffs' claims would be premature.

## Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion for class certification [docket no. 75]. The Court certifies the following classes under Rule 23: (1) all males who were subjected to a strip search and/or a visual body cavity search as new detainees at the Cook County Jail on or after January 30, 2004; and (2) all persons charged only with misdemeanor or lesser offenses not involving drugs or weapons who were subjected to a strip search and/or a visual body cavity search as new detainees at the Cook County Jail on or after January 30, 2004.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 25, 2007