IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KIM YOUNG, RONALD JOHNSON, WILLIAM JONES, ALLEN GORMAN, GERRAD LAMOUR, LEE MERCADO, CARL GRAY, MATTHEW LIPTAK, and BRADLEY HYTREK, on behalf of themselves and a class of others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No: 06-CV-552 |
| COUNTY OF COOK, MICHAEL SHEAHAN, individually and in his official capacity as Sheriff of Cook County, CALLIE BAIRD, individually and in her official capacity as former Director of the Cook County Department of Corrections, SCOTT KURTOVICH, individually and in his official capacity as Director of the Cook County Department of Corrections, KAREN SCOTT, individually and in her official capacity as former Chief Operating Officer of the Cook County Department of Public Health, STEPHEN MARTIN, Jr., individually and in his official capacity as Chief Operating Officer of the Cook County Department of Public Health, RUTH ROTHSTEIN, individually and in her official capacity as former director of the Cook County Bureau of Health Services, DANIEL WINSHIP, individually and in his official capacity as director of the Cook County Bureau of Health Services, LEONARD BERSKY, individually and in his official capacity as former Chief Operating Officer of Cermak Health Services of Cook County; DAVID FAGUS, individually and in his official capacity as Chief Operating Officer of Cermak Health Services of Cook County; and SALVADOR GODINEZ, individually and in his official capacity as Director of the Cook County Department of Corrections, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | JUDGE KENNELLY |
| Defendants. | ) | JURY TRIAL DEMANDED |

## FIFTH AMENDED COMPLAINT

Named Plaintiffs KIM YOUNG, RONALD JOHNSON, WILLIAM JONES, ALLEN GORMAN, GERRAD LAMOUR, LEE MERCADO, CARL GRAY, MATTHEW LIPTAK, and BRADLEY HYTREK, on behalf of themselves and a class of others similarly situated, through their attorneys, Loevy & Loevy, complaining of Defendants COUNTY OF COOK, MICHAEL SHEAHAN, individually and in his official capacity as Cook County Sheriff, CALLIE BAIRD, individually and in her official capacity as former Director of the Cook County Department of Corrections, SALVADOR GODINEZ individually and in his official capacity as Director of the Cook County Department of Corrections, SCOTT KURTOVICH, individually and in his official capacity as Director of the Cook County Department of Corrections, KAREN SCOTT, individually and in her official capacity as former Chief Operating Officer of the Cook County Department of Public Health, STEPHEN MARTIN, Jr., individually and in his official capacity as Chief Operating Officer of the Cook County Department of Public Health, RUTH ROTHSTEIN, individually and in her official capacity as former director of the Cook County Bureau of Health Services, DANIEL WINSHIP, individually and in his official capacity as director of the Cook County Bureau of Health Services, LEONARD BERSKY, individually and in his official capacity as former Chief Operating Officer of Cermak Health Services of Cook County, and DAVID FAGUS, individually and in his official capacity as Chief Operating Officer of Cermak Health Services of Cook County, state as follows:

## Introduction

1.      This is an action pursuant to 42 U.S.C. § 1983 and state law challenging several unjustified and sexually-intrusive search procedures used on both men and women during the booking/intake process at the Cook County Jail ("CCJ").

2.      First, the CCJ maintains a blanket policy requiring that all women placed in its custody undergo a vaginal swabbing, a procedure which involves the insertion of a probe into the vagina.

3.      There is no legitimate purpose for subjecting detainees to this procedure. Rather, as explained below, it serves only to humiliate and dehumanize the women detainees. While Defendants subject all women to this procedure upon their entry into Cook County Jail, it either ceased performing, or significantly restricted the use of the equivalent procedure on male detainees under equivalent circumstances several years ago, after being sued by a male detainee in the case of Thompson v. County of Cook, *et al.*, 03-C-7172.

4.      In addition to lacking any legitimate purpose, the procedures are also performed in a coercive, unsanitary, and dehumanizing environment.  The examiners often fail to change gloves between procedures or otherwise follow usual precautions against the spread of infection. Moreover, the women are provided no explanation of what is being done to them.  Indeed, asking questions can be considered recalcitrance which can result in the use of physical force on the woman.

5.      For example, Plaintiff YOUNG was processed into the CCJ as part of a group of approximately 30 women, all of whom were required to undergo the vaginal swabbing.  After it became clear what was being done to the group, one of the women demanded to know if the personnel performing the procedures were licensed.  In response to her questions, several jail guards assaulted this woman in front of the rest of the group.  Plaintiff herself asked what was about to happen to her when she was ordered to place herself on a table and put her legs in stirrups.  Her question met with silence and she had to participate without an explanation.

6.      The CCJ also requires both men and women to undergo strip and body cavity

searches during intake/booking.  For men, the procedure requires that they strip naked and line up facing a wall shoulder-to-shoulder with tens of other men (and sometimes more than 100) who are also being processed into the jail.  The men are then instructed as a group to bend over and spread their buttocks with their hands.  All of the men must remain in this position as guards walk down the row and visually inspects each man's anal cavity.  Often men are forced to stand naked amongst each other in close proximity for thirty-minutes or more.

7.      Women are required to undergo a similar set of searches, but, at least, not in the presence of other detainees.  The women must strip naked, bend over and assume a crouched position.  They are then instructed to cough several times as a guard or guards watch.

8.      These strip and visual body cavity searches are conducted pursuant to a blanket procedure that does not require any particularized suspicion that the detainee is concealing anything in his/her cavities.  Moreover, the CCJ requires that these searches be conducted on all detainees at the time they are first brought to the CCJ without regard to the nature of the crime for which they are being held.  In other words, a person arrested for a traffic-related misdemeanor who has not yet been able to raise bail will be subjected to the same invasive search as someone arrested for much more serious offences.

9.      The CCJ had no justification to force PLAINTIFFS and the members of the class to submit to these needlessly invasive searches and/or for forcing them to undergo the procedures in such humiliating ways.  Nevertheless, Cook County's policymakers, including Defendant SHEAHAN, instituted these unconstitutional procedures and they have turned a blind eye to the dehumanizing way in which these searches are conducted.

10.     Indeed, individuals have sued previously over these practices, but the relatively-small liability threatened by these individual suits has not been sufficient to cause the

4

policymakers to implement reforms.  Plaintiffs bring this class action to compensate those who have been victimized by these sexually-invasive procedures and, hopefully, to bring change.

## Jurisdiction and Venue

11.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiffs asserts claims under federal law and the state law claims all arise out of the same facts as the federal claims.  Venue is proper under 28 U.S.C. § 1391(b) as Defendant, COUNTY OF COOK, is physically situated in this judicial district, and the events giving rise to the claims in this case all occurred here.

## Parties

12.     Named Plaintiff KIM YOUNG is 44 years old.  She resides in the State of Wisconsin.  She is employed as a certified nurse assistant.  She has three daughters.

13.     Named Plaintiff RONALD JOHNSON is 41 years old and resides in Flossmoor, Illinois.  He has a degree in business from Western Illinois University and is employed in auto sales.

14.     Named Plaintiff WILLIAM JONES is a 50 year-old Illinois resident.  He works as an expediter at a manufacturing company.

15.     Named Plaintiff ALLEN GORMAN is a 68-year-old Illinois resident.  He is a building contractor and home repairman.

16.     Named Plaintiff GERRAD LAMOUR is a 34-year-old Illinois resident.  He is a pharmacy technician at Mt. Sinai Hospital.

17.     Named Plaintiff LEE MERCADO is a 30-year-old Illinois resident.  He works for a real estate development agency.

18.     Named Plaintiff CARL GRAY is a 54-year-old Illinois resident.  He is an independent food distributor.

19.     Named Plaintiff MATTHEW LIPTAK is a 52-year-old Illinois resident.  He is a painter and mechanic.

20.     Named Plaintiff BRADLEY HYTREK is a 41-year-old Illinois resident.  He is a software sales representative.

21.     Defendant COUNTY OF COOK is a county of the State of Illinois.  It oversees the Cook County Department of Corrections which in turn operates the Cook County Jail. It also oversees the Cook County Department of Health with in turn operates Cermak Health Services.

22.     Defendant MICHAEL SHEAHAN is a resident of Cook County, Illinois. Throughout the class period, he has been the Sheriff of Cook County.  In that capacity he is in charge of the Cook County Department of Corrections and the Cook County Jail.  By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue in this case.  He is responsible for ensuring that the policies and practices of the CCJ comply with federal and state requirements for the treatment of detainees.  Throughout the class period, he has had personal knowledge that the practices challenged in this case were occurring on a routine basis.  He is sued in his official and individual capacities for the forced vaginal swabbing procedures as well as for the strip and cavity search procedures.

23.     Defendants CALLIE BAIRD, SALVADOR GODINEZ and SCOTT KURTOVICH have served as the Director of the Cook County Department of Corrections during the class period.  Throughout their respective tenures as Director they have had responsibility, *inter alia*, for ensuring that the practices of the CCJ comply with federal and state requirements for the treatment of detainees.  Throughout their respective tenures as Director,

6

they implemented, enforced, and/or condoned the use of procedures challenged in this case.

They are sued in their official and individual capacities for the forced vaginal swabbing

procedures as well as for the strip and cavity search procedures.

24.     Defendants KAREN SCOTT and STEPHEN MARTIN, Jr., have served as the

Chief Operating Officer of the Cook County Department of Public Health.  In that capacity they

were in charge of the Cook County Department of Health.  By law, custom, and/or delegation,

they had policymaking authority over actions of Cermak Health Services at the CCJ at issue in

this case.  Throughout their respective tenures as Director they have had responsibility for

ensuring that the policies and practices that they caused to be implemented at the CCJ comply

with federal and state requirements for the treatment of detainees.   Throughout their respective

tenures as Director, they implemented, enforced and/or condoned the use of procedures

challenged in this case.   They are sued in their official and individual capacities for the forced

vaginal swabbing procedures at the CCJ.

25.     Defendants RUTH ROTHSTEIN and DANIEL WINSHIP have served as the

director of the Cook County Bureau of Health Services.  In that capacity they were in charge of

the Bureau of Health Services and Cermak Health Services.  By law, custom, and/or delegation,

they had policymaking authority over the actions of Cermak Health Services at the CCJ at issue

in this case.  Throughout their respective tenures as Director they have had responsibility for

ensuring that the policies and practices of Cermak Health Services at the CCJ comply with

federal and state requirements for the treatment of detainees.  Throughout their respective tenures

as Director, they implemented, enforced and/or condoned the use of procedures challenged in

this case.  They are sued in their official and individual capacities for the forced vaginal

swabbing procedures at the CCJ.

7

26.     Defendants LEONARD BERSKY and DAVID FAGUS have served as the Chief Operating Officer of Cermak Health Services of Cook County.   In that capacity they were responsible, *inter alia*, for ensuring that the practices of Cermak Health Services complies with federal and state requirements for the treatment of detainees.   Throughout their respective tenures as Director, they implemented, enforced and/or condoned the use of procedures challenged in this case.   They are sued in their official and individual capacities for the forced swabbing procedure.

### Facts Concerning the Named Plaintiffs

27.     On the evening of January 13, 2005, Plaintiff YOUNG was driving to her cousin's house in Chicago for a funeral.   Her daughter, sister and granddaughters were in the car with her.

28.     Police arrested her on a warrant that was issued after Plaintiff YOUNG had failed to appear on a traffic ticket.

29.     The police took her to the CCJ where she was processed in accordance with the jail's usual procedures.   Ms. Young participated in the intake with approximately 30 other women.

30.     First, the women were placed in a line and serially taken behind a partition. When Ms. Young's turn came, she was ordered to remove all of her clothes and underwear, and was told to squat down in front of a guard.   The guard then told her to cough.   Ms. Young complied with all of the guard's instructions.   She was required to repeat this procedure three times before being allowed to dress again.

31.     Later, the approximately 30 women were led to a hallway lined with chairs, where they were ordered to sit and wait.   Periodically, a woman emerged from a room off the hallway

8

to call numbers assigned to the detainees.  When their numbers were called, the detainees were made to enter the room.

32.     When the woman called Ms. Young's number, she entered the room and was told to sit at one of three tables.  A woman, who was dressed in street clothes drew two tubes of blood from Ms. Young's arm. When Young asked the woman why her blood was being taken, the woman did not respond.

33.     Ms. Young was then sent to sit in the hallway again.  Approximately twenty minutes later, she was called back into the room, but this time she was led behind a partition.  A woman ordered Young to remove her clothes again saying, "we're going to examine you." When Young asked what she was being examined for, the woman responded "just get on the table." Young protested, telling the woman that she expected to be bonded out of the jail soon.  Ms. Young was ordered to climb on to the examining table and place her feet in stirrups.

34.      The woman proceeded to perform a vaginal swab on Ms. Young which included inserting a speculum and other probes into Ms. Young's vaginal cavity.

35.     Ms. Young was never given any paper to read or sign before any of these procedures were performed on her, nor was she asked any questions about her medical status or history.

36.     After the procedure, Ms. Young was instructed to return to the hall, where she waited while the other women underwent the same procedure.

37.     At one point, while Ms. Young was sitting in the hallway, one of the female detainees demanded to know if the person drawing blood was licensed.  When this person responded that she was not licensed, the woman refused to enter the room with her. The woman responded, "we're going to show you," or words to that effect.  Soon guards arrived, physically

abused the protesting detainee, and took her away.

38.     Neither Ms. Young nor any of the other women in her presence were asked to consent to these procedures nor were the nature or purpose of the procedures explained to them.

39.     On information and belief, the persons administering these procedures were employees or agents of the Cook County Department of Health and of Cermak Health Services.

40.     On January 15th, approximately 36 hours after being arrested, Ms. Young was brought before a judge and was released from Cook County Jail.  While being checked out of the jail, Ms. Young asked the woman processing her paperwork if she could see the results of the procedures.  The woman laughed at this request, and said "you better get out of here now."

41.     On April 18, 2005, Plaintiff JOHNSON was booked into CCJ after having been charged with possession of a controlled substance, a false charge of which he was later acquitted.

42.     Mr. Johnson went through the intake process with approximately 100 other men. These men were all ordered into a crowded hallway and then instructed to strip naked as a group. They remained naked in each other's presence for more than thirty minutes.  The ventilation was insufficient and the air stank of body odor.

43.     At one point they were told to face a wall, bend over, and spread their buttocks with their hands.  They had to remain in that position as guards walked down the row visually inspecting them.  Several of the guards made comments that the men were un-bathed and stank.

44.     The following day, Mr. Johnson was released from CCJ and placed on home monitoring.

45.     On December 30, 2005, Plaintiff JONES was riding in a friend's car when the friend was pulled over by Palatine police.  Upon checking the identity of the vehicle's occupants, the officers discovered an outstanding warrant for Mr. Jones, issued after he had failed to appear

at a hearing regarding a traffic offense.  They therefore arrested him.

46.     The police took Mr. Jones to CCJ where he was processed in accordance with the jail's usual procedures.  Mr. Jones participated in the intake with approximately 100 other men.

47.     These men were all ordered into a crowded hallway and then instructed to strip naked as a group.  They remained naked in each other's presence for approximately 40 minutes. There was no heat in the hallway, and the temperature felt to be less than 50 degrees Fahrenheit. Many of the men were shivering. In addition, the ventilation was insufficient and the air stank of body order.

48.     At one point a guard  told the men to put their head on one of the hallway walls, which were filthy, bend over, and spread their buttocks with their hands.  They had to remain in that position as a guard walked down the row visually inspecting them.

49.     During the 40 minute period, the guards repeatedly engaged in hazing behavior, poking fun at the men and trying to "put them in their place" with teasing commands.

50.     On April 20, 2007, Plaintiff GORMAN was arrested and charged with criminal damage to property.

51.      The day after his arrest, Mr. Gorman was taken to Cook County Jail and participated in the intake strip search with approximately 100 or more other men.

52.     These men were all ordered into a crowded hallway and then instructed to strip naked as a group.  The strip search lasted for approximately 30 minutes.  The hallway was cold and the temperature felt to be less than 50 degrees Fahrenheit.

53.     While standing extremely close to one another, with no partitions or dividers of any kind, Mr. Gorman and the other naked men were ordered to turn and face the wall, bend over, and spread their buttocks with their hands.  They had to remain in that position for several

11

minutes, as a guard walked down the row visually inspecting them.

54.     During the strip search, the guards repeatedly yelled at the detainees and were threatening them with violence.

55.     On April 24, 2007, Plaintiff LAMOUR was arrested and charged with driving on a suspended license.  The charge was ultimately dismissed.

56.     That day, Mr. Lamour was taken to Cook County Jail and participated in the intake strip search with approximately 75 or more other men.

57.     These men were all ordered into a crowded hallway and were tightly packed together, with no partitions or dividers of any kind to separate them.  The hallway was dirty, dank, and had a strong stench. The hallway was freezing and felt to be well below room temperature.

58.     The guards instructed the men to strip naked as a group.  Mr. Lamour and the other men removed all of their clothing, turned and faced the wall, bent over, and spread their buttocks with their hands.  Mr. Lamour observed detainees who appeared to be physically sick. The strip search lasted approximately 45 minutes.

59.     The guards were verbally and physically abusive to the men.

60.     On March 24, 2007, Plaintiff MERCADO was pulled over by the Oak Park police and was informed that he had a warrant for a prior traffic violation.

61.     On March 26, 2007, Mr. Mercado was taken to Cook County Jail and participated in the intake strip search with approximately 100 or more other men.

62.     These men were all ordered into a crowded hallway and were tightly packed together, with no partitions or dividers of any kind to separate them.  The hallway was dirty, dank, and had a strong stench. The hallway was cold and felt to be below room temperature.

12

63.     The guards instructed the men to strip naked as a group. Mr. Mercado and the other men removed all of their clothing, turned and faced the wall, bent over, and spread their buttocks with their hands.  The strip search lasted approximately 45 minutes.

64.     During the strip search, Mr. Mercado observed the guards to be verbally and physically intimidating.

65.     On November 21, 2008, Plaintiff GRAY was arrested for an alleged felony drug possession charge.  The charge against him was eventually dismissed.

66.     The day after his arrest, Mr. Gray was taken to Cook County Jail and participated in the intake strip search with approximately 50 other men.

67.     These men were all ordered into a long hallway and were packed together, with no dividers or privacy screens of any kind to separate them.  The hallway was cold and dirty and the floor appeared to be covered in grime.

68.     The guards instructed the men to strip naked as a group. Mr. Gray and the other men remained naked in each other's presence for approximately twenty minutes.

69.     During the search, the guards used verbal intimidation, including derogatory terms and profanity.  The guards swore at the detainees and called them "ladies" as they stood naked.  The guards threatened to use physical violence against the detainees.

70.     Mr. Gray and the other men removed all of their clothing, turned and faced the wall, bent over, and spread their buttocks with their hands.  They were also ordered to squat and cough.  Mr. Gray and the other men were also ordered to lean against the wall.

71.     Mr. Gray observed one female guard in plain view of him and the other detainees, as they were strip-searched.

72.     On March 5, 2007, Plaintiff LIPTAK was arrested for allegedly driving on a suspended or revoked license.  The charge was classed as a felony.

73.     The day after his arrest, Mr. Liptak was taken to Cook County Jail and participated in the intake strip search with several other men.

74.     These men were all ordered into a long hallway and were packed together, with no dividers or privacy screens of any kind to separate them.  The hallway was filthy.  There was vomit splattered on the floor.

75.     The guards instructed the men to strip naked as a group. Mr. Liptak and the other men removed all of their clothing, turned and faced the wall, bent over, and spread their buttocks with their hands.  The guards forced the men to repeat the entire process at least one additional time.  Mr. Liptak and the other men remained naked in each other's presence for approximately twenty minutes.

76.     During the search, the guards used verbal intimidation, including derogatory terms and profanity.  The guards were also physically violent.  One guard pushed Mr. Liptak's head into the wall during the strip search, causing Mr. Liptak to sustain a cut above his eye.  He has a permanent scar from this injury.  Mr. Liptak also observed a guard kick another detainee in the buttocks area.

77.     Mr. Liptak observed dogs in the hallway during the strip search.

78.     On March 1, 2008, Plaintiff HYTREK was arrested and charged with driving on a suspended license.

79.     The day after his arrest, Mr. Hytrek was taken to Cook County Jail and participated in the intake strip search with approximately 40 or more other men.

80.     These men were all ordered into a crowded hallway and were tightly packed together, despite the fact that there was more room available in the hallway.  There were no partitions or dividers of any kind to separate them. The hallway was dirty, dank, and had a strong stench.

81.     The guards instructed the men to strip naked as a group. Mr. Hytrek and the other men removed all of their clothing, turned and faced the wall, bent over, and spread their buttocks with their hands.  Mr. Hytrek and the other men were ordered to place their heads against the wall, which appeared filthy and unsanitary. They had to remain in that position for several minutes, as a guard walked down the row visually inspecting them.

82.     The strip search lasted approximately 45 minutes or more.  During the strip search, Mr. Hytrek observed detainees who appeared to be physically sick.  The guards used verbal intimidation and unlawful physical force toward the men.

## Class Allegations

83.     Cook County Jail is one of the largest detention centers in the world.  Hundreds of men and women are brought into Cook County Jail each day, amounting to approximately 100,000 people per-year.  Each person booked into Cook County Jail is subjected to the intake procedures described herein.

84.     Named Plaintiffs YOUNG, JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK (the "Named Plaintiffs") seek to pursue claims both for themselves and for a class of others similarly situated.  Named Plaintiffs believe that the class should be organized into the following four subclasses.

85.     Class I consists of:

All women who have been subjected to vaginal swabbing in connection with the
intake procedures at the Cook County Jail at anytime on or after January 30, 2004.

Class I brings claims pursuant to the Fourth Amendment, the Due Process Clause and the Equal

Protection Clause.  Plaintiff YOUNG seeks to represent this class.

86.     The individuals in Class I are so numerous that joinder of all members is

impractical.  The Named Plaintiffs estimate that Class I numbers in at least the thousands.

a.     On information and belief, approximately 200,000 persons have been

booked into the Cook County Jail during the Class Period.  A substantial percentage of these

persons are women;

b.     On information and belief, all women booked into Cook County Jail

during the Class Period have been subjected to the challenged swabbing procedure; and

c.     Ms. Young herself witnessed at least 30 women being subjected to the

procedure.

87.     There are questions of law and fact common to the claims of Class I.  Among

these common questions are:

a.     Whether there is any legitimate purpose for subjecting the female

detainees to the swabbing procedure;

b .     Whether there is any sufficient justification for continuing to subject

women to the swabbing procedure when the CCJ discontinued or curtailed subjecting men to the

equivalent procedure under equivalent circumstances;

c.     Whether the use of the procedure and/or the way in which it is conducted

16

is an  unreasonable search;

       d.     Whether the use of the procedure and/or the way in which it is conducted violates the detainees' rights under the Due Process Clause;

       e.     Whether the use of the procedure on women when the equivalent procedure on men has been discontinued violates the women's rights to Equal Protection;

       f.     Whether Cook County maintains an express policy, custom, and/or widespread practice requiring the swabbing procedure, and/or whether the procedure was instituted by a policymaker(s) of Cook County, and/or whether the policymakers of Cook County condoned or were deliberately indifferent to the use of the procedure;

       g.     Whether any of Defendants SHEAHAN, BAIRD, KURTOVICH, SCOTT, MARTIN, ROTHSTEIN, WINSHIP, BERSKY and/or FAGUS failed in their supervisory responsibilities to have terminated this procedure; and

       h.     Whether the procedure violates the women's rights under state law.

88.     Plaintiff YOUNG's claims are typical of the claims of Class I.  Ms. Young was detained at the CCJ and was subjected to the swabbing procedure in accordance with the CCJ's usual practices.  She seeks to prove that the procedure violates the Fourth Amendment, the Due Process Clause and the Equal Protection Clause, as well as state law, and that each of the Defendants is liable.

89.     Plaintiff Young will fairly and adequately represent the interests of Class I.  She has retained skilled counsel with experience in constitutional and class action litigation to represent the Class.

90.     The questions of law and fact common to Class I predominate over any individual

issues.

91.     Class II consists of:

All men who have been subjected to a strip and visual body cavity search
pursuant to the uniform intake search procedures at the Cook County Jail at
anytime on or after January 30, 2004.

Class II brings claims pursuant to the Fourth Amendment, the Due Process Clause and the Equal

Protection Clause.  Plaintiffs JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY,

LIPTAK, and HYTREK seek to represent this class.

92.     The individuals in the Class II are so numerous that joinder of all members is

impractical.  The Named Plaintiffs estimate that Class II numbers in at least the thousands.

a.     On information and belief, approximately 200,000 persons have been

booked into the Cook County Jail during the Class Period.  A substantial portion of the persons

are male;

b.     On information and belief, each man booked into Cook County Jail during

the Class Period has been subjected to the group strip and visual cavity search described herein;

c.     Mr. Johnson himself witnessed approximately 100 men being subjected to

the procedure;

d.     Mr. Jones himself witnessed approximately 100 men being subjected to

the procedure;

e.     Mr. Gorman himself witnessed approximately 100 men being subjected to

the procedure;

f.     Mr. Lamour himself witnessed approximately 75 men being subjected to

the procedure; and

18

g.     Mr. Mercado himself witnessed approximately 100 men being subjected to the procedure.

h.     Mr. Gray himself witnessed approximately 50 men being subjected to the procedure; and

i.     Mr. Liptak himself witnessed approximately fifty or more men being subjected to the procedure;

j.     Mr. Hytrek himself witnessed approximately 40 men being subjected to the procedure.

93.     There are questions of law and fact common to the claims of Class II.  Among these common questions are:

a.     Whether it is unreasonable to conduct group strip and visual body cavity searches of the men in a manner which violates the Fourth Amendment;

b.     Whether the use of group strip and visual body cavity searches violates the men's rights under the Due Process Clause;

c.     Whether the use of a group strip and body cavity search procedure for men but not for women violates the Equal Protection Clause;

d.     Whether Cook County maintains an express policy, custom and/or widespread practice requiring the group procedure for members of Class II, and/or whether the application of the procedure to members of Class II was instituted by a Cook County policymaker(s), and/or whether the policymakers of Cook County condoned or were deliberately indifferent to the use of the procedure on the members of Class II;

e.     Whether any of Defendants SHEAHAN, BAIRD, GODINEZ and/or

19

KURTOVICH failed in their supervisory responsibilities to have avoided the use of a group strip and cavity search procedure for the members of Class II; and

        f.      Whether the procedure violates the state law rights of the members of Class II.

94.    Plaintiffs JOHNSON's and JONES' claims are typical of the claims of Class II. Both were booked into the CCJ and was subjected to the strip search and visual cavity search procedure in accordance with the CCJ's usual practices for males.  Both seek to prove that the procedure violates the Fourth Amendment, the Due Process Clause and the Equal Protection Clause as well as state law, and that Defendants COOK COUNTY, SHEAHAN, KURTOVICH, GODINEZ and BAIRD are liable as a result.

95.    Plaintiffs JOHNSON and JONES will fairly and adequately represent the interests of Class II.  They have retained skilled counsel with experience in constitutional and class action litigation to represent the Class.

96.    Plaintiffs GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK's claims are typical of the claims of Class II.  All were booked into the CCJ after February 1, 2007 and were subjected to the strip search and visual cavity search procedure in accordance with the CCJ's usual practices for males.  All seek to prove that the procedure violates the Fourth Amendment, the Due Process Clause and the Equal Protection Clause as well as state law, and that Defendants COOK COUNTY and SHEAHAN, KURTOVICH, GODINEZ and BAIRD in their official capacities are liable as a result.

97.    Plaintiffs GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK will fairly and adequately represent the interests of Class II.  They have retained skilled counsel

with experience in constitutional and class action litigation to represent the Class.

98.     The questions of law and fact common to the Class II predominate over any individual issues.

99.     Class III consists of:

> All persons who were arrested on failure to appear or bench warrants for traffic or misdemeanor offenses and all persons arrested for traffic or misdemeanor offenses and who were subsequently subjected to a strip and/or visual cavity search at the Cook County Jail at anytime on or after January 30, 2004 pursuant to the uniform  intake search procedures.

Class III brings claims pursuant to the Fourth Amendment and the Due Process Clause. Plaintiffs YOUNG and JONES seek to represent this class.

100.     The individuals in Class III are so numerous that joinder of all members is impractical.  The Named Plaintiffs estimate that Class III numbers in at least the thousands.

a.     On information and belief, approximately 200,000 persons have been booked into the Cook County Jail during the Class Period;

b.     On information and belief, each person booked into Cook County Jail during the Class Period has been subjected to the strip searches described herein;

c.     Ms. Young herself witnessed at least 30 women being subjected to the procedure;

d.     Mr. Johnson himself witnessed approximately 100 men being subjected to the procedure; and

e.     Mr. Jones himself witnessed approximately 100 men being subjected to the procedure.

101.     There are questions of law and fact common to the claims of Class III.  Among

these common questions are:

       a.    Whether there is any sufficient justification for subjecting the members of Class III to a blanket strip/visual cavity search procedure;

       b.    Whether the use of the procedure and/or the way in which it is conducted is an  unreasonable search;

       c.    Whether the use of the procedure and/or the way in which it is conducted violates the detainees' rights under the Due Process Clause;

       d.    Whether Cook County maintains an express policy, custom and/or widespread practice requiring the  procedure for members of Class III, and/or whether the application of the procedure to members of Class III was instituted by a Cook County policymaker(s), and/or whether the policymakers of Cook County condoned or were deliberately indifferent to the use of the procedure on the members of Class III;

       e.    Whether any of Defendants SHEAHAN, KURTOVICH, GODINEZ and/or BAIRD failed in their supervisory responsibilities to have avoided strip/visual cavity searching the members of Class III; and

       f.    Whether the procedure violates the state law rights of the members of Class III.

102.    Plaintiffs YOUNG's and JONES' claims are typical of the claims of Class III. Both were arrested for a failure to appear for traffic offenses and both were then detained at the CCJ and subjected to a strip search procedure in accordance with the CCJ's usual practices. Both seek to prove that the procedure violates the Fourth Amendment and the Due Process Clause, as well as state law, and that Defendants COOK COUNTY, SHEAHAN, KURTOVICH,

GODINEZ, and BAIRD are liable as a result.

103.   Plaintiffs Young and Jones will fairly and adequately represent the interests of the

Class III.  They have retained skilled counsel with experience in constitutional and class action

litigation to represent the Class.

104.   The questions of law and fact common to the Class III predominate over any

individual issues.

105.   Class IV consists of:

All persons who were arrested for non-drug-related offenses and who were
subsequently subjected to a visual cavity search at the Cook County Jail at
anytime on or after January 30, 2004 pursuant to the uniform intake search
procedures.

Class IV brings claims pursuant to the Fourth Amendment and the Due Process Clause.

Plaintiffs YOUNG and JONES seek to represent this class.

106.   The individuals in Class IV are so numerous that joinder of all members is

impractical.  The Named Plaintiffs estimate that Class IV numbers in at least the thousands.

a.   On information and belief, approximately 200,000 persons have been

booked into the Cook County Jail during the Class Period;

b.   On information and belief, each person booked into Cook County Jail

during the Class Period has been subjected to the visual cavity searches described herein;

c.   Ms. Young herself witnessed at least 30 women being subjected to the

procedure;

d.   Mr. Johnson himself witnessed approximately 100 men being subjected to

the procedure; and

     e.     Mr. Jones himself witnessed approximately 100 men being subjected to the procedure.

107.    There are questions of law and fact common to the claims of Class IV. Among these common questions are:

     a.     Whether there is any sufficient justification for a blanket procedure of subjecting the members of Class IV to a visual cavity search;

     b.     Whether the procedure is an unreasonable search;

     c.     Whether the use of the procedure and/or the way in which it is conducted violates the detainees' rights under the Due Process Clause;

     d.     Whether Cook County maintains an express policy or custom requiring the  procedure for members of Class IV, and/or whether the application of the procedure to members of Class IV was instituted by a Cook County policymaker(s), and/or whether the policymakers of Cook County condoned or were deliberately indifferent to the use of the procedure on the members of Class IV;

     e.     Whether any of Defendants SHEAHAN, KURTOVICH, GODINEZ and/or BAIRD failed in their supervisory responsibilities to have avoided visual cavity searching the members of Class IV; and

     f.     Whether the procedure violates the state law rights of the members of Class IV.

108.    Plaintiffs YOUNG's and JONES' claims are typical of the claims of Class IV. Both were arrested for non-drug-related offenses and both were subjected to the visual cavity search procedure in accordance with the CCJ's usual practices. Both seek to prove that the

24

procedure violates the Fourth Amendment and the Due Process Clause, as well as state law, and that Defendants COOK COUNTY, SHEAHAN, GODINEZ,  KURTOVICH and BAIRD are liable as a result.

109.     Plaintiffs Young and Jones will fairly and adequately represent the interests of the Class IV.  They have retained skilled counsel with experience in constitutional and class action litigation to represent the Class.

110.     The questions of law and fact common to the Class IV predominate over any individual issues.

### Count I - Class I's claims pursuant to 42 U.S.C. §1983<br>for violations of the Fourth and Fourteenth Amendments

111.      Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

112.     There is no proper or sufficient need or justification for the vaginal swabbing procedure.

113.     By instituting and continuing the vaginal swabbing procedures identified above, Defendants have subjected Plaintiff YOUNG and the members of Class I to an unreasonable search in violation of the Fourth Amendment.

114.     By instituting and continuing the vaginal swabbing procedures identified above, Defendants have subjected Plaintiff YOUNG and the members of Class I to punishment in violation of the Fourteenth Amendment.

115.     By instituting and continuing the vaginal swabbing procedures identified above, Defendants have denied Plaintiff YOUNG and the members of Class I the right to select and control their own medical treatment including refusing treatment, all in violation of the

25

Fourteenth Amendment.

116.    Policies, customs and/or widespread practices of Defendant COOK COUNTY,
and/or the express decisions of its policymaker(s) are the moving force behind these violations.
Defendants SHEAHAN, BAIRD, KURTOVICH, SCOTT, MARTIN, ROTHSTEIN, WINSHIP,
BERSKY and FAGUS had supervisory responsibility to have terminated the procedure and
failed to do so.

WHEREFORE, Named Plaintiff YOUNG respectfully demands judgment on
behalf of herself and the class, awarding costs, fees, attorneys fees, actual damages, and any
other appropriate relief against Defendants COOK COUNTY, SHEAHAN, BAIRD,
KURTOVICH, SCOTT, MARTIN, ROTHSTEIN, WINSHIP, BERSKY and FAGUS.  Named
Plaintiff YOUNG further demands an award of punitive damages on behalf of herself and the
class against Defendants SHEAHAN, BAIRD, KURTOVICH, SCOTT, MARTIN,
ROTHSTEIN, WINSHIP, BERSKY and FAGUS.

### Count II - Class I's claims pursuant to  42 U.S.C. §1983 for violations of the Equal Protection Clause

117.    Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

118.    By continuing the blanket vaginal swabbing procedures identified above even
after terminating or limiting the use of the equivalent procedure for males, Defendants have
violated the right to equal protection of Plaintiff YOUNG and the members of Class I.

119.    There is no proper or sufficient need or justification for discriminating between
men and women with regard to the swabbing procedure.

120.    The continuation of the procedure for women, and/or the failure to limit it in the

same manner as for men, resulted from policies, customs and/or widespread practices of Defendant COOK COUNTY, and/or the express decisions of its policymaker(s).  Defendants SHEAHAN, BAIRD, KURTOVICH, SCOTT, MARTIN, ROTHSTEIN, WINSHIP, BERSKY and FAGUS, instituted and/or condoned the differential treatment, and/or failed in their supervisory responsibility to have terminated or limited the procedures as to women when those steps were taken for the men.

WHEREFORE, Named Plaintiff YOUNG respectfully demands judgment on behalf of herself and the class, awarding costs, fees, attorneys fees, actual damages, and any other appropriate relief against Defendants COOK COUNTY, SHEAHAN, BAIRD, KURTOVICH, SCOTT, MARTIN, ROTHSTEIN, WINSHIP, BERSKY and FAGUS.  Named Plaintiff YOUNG further demands an award of punitive damages on behalf of herself and the class against Defendants SHEAHAN, BAIRD, KURTOVICH, SCOTT, MARTIN, ROTHSTEIN, WINSHIP, BERSKY and FAGUS.

### Count III - Class II's claims pursuant to 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments

121.    Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

122.    There is no proper or sufficient justification for the use of a group strip and cavity search procedure, nor for the other aspects of the procedure including the amount of time for which the men must remain naked.

123.    By instituting and continuing the group strip and cavity search procedures identified above, Defendants have subjected Plaintiffs JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK and the members of Class II to an

unreasonable search in violation of the Fourth Amendment.

124.     By instituting and continuing the group strip and cavity search procedure and allowing it to be performed in the alleged manner Defendants have subjected Plaintiffs JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK and the members of Class II to punishment in violation of the Fourteenth Amendment.

125.     Policies, customs and/or widespread practices of Defendant COOK COUNTY, and/or the express decisions of its policymaker(s) are the moving force behind these violations. Defendants SHEAHAN, BAIRD, GODINEZ and KURTOVICH in their official capacities instituted, condoned, and/or failed in their supervisory responsibility to have terminated the procedure.

WHEREFORE, Named Plaintiffs JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK respectfully demand judgment on behalf of themselves and the class, awarding costs, fees, attorneys fees, actual damages, and any other appropriate relief against Defendants COOK COUNTY and SHEAHAN, BAIRD, GODINEZ and KURTOVICH in their official capacities.  Named Plaintiffs JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK further demand an award of punitive damages on behalf of themselves and the class against Defendants SHEAHAN, BAIRD, GODINEZ and KURTOVICH.

### Count IV - Class II's claims pursuant to 42 U.S.C. §1983 for violations of the Equal Protection Clause

126.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

127.     By instituting and continuing the group strip and cavity search procedures

28

identified above for men but using an individualized and private search for women, Defendants

have violated the right to equal protection of Plaintiffs JOHNSON, JONES, GORMAN,

LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK and the members of Class II.

128.    There is no proper or sufficient need or justification for discriminating between

men and women with regard to the searches.

129.    The use and continuation of this discriminatory procedure resulted from policies,

customs and/or widespread practices of Defendant COOK COUNTY, and/or the express

decisions of its policymaker(s).  Defendants SHEAHAN, BAIRD, GODINEZ and

KURTOVICH instituted, condoned, and/or failed in their supervisory responsibility to have

terminated the procedure.

WHEREFORE, Plaintiffs  JOHNSON, JONES, GORMAN, LAMOUR,

MERCADO, GRAY, LIPTAK, and HYTREK respectfully demand judgment on behalf of

themselves and the class, awarding costs, fees, attorneys fees, actual damages, and any other

appropriate relief against Defendants COOK COUNTY and SHEAHAN, BAIRD, GODINEZ

and KURTOVICH, in their official capacities.  Named Plaintiffs JOHNSON, JONES,

GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HTYREK further demand an award

of punitive damages for themselves and the Class against Defendants SHEAHAN, BAIRD,

GODINEZ and KURTOVICH.

### Count V - Class III's claims pursuant to 42 U.S.C. §1983
### for violations of the Fourth and Fourteenth Amendments

130.    Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

131.    There is no proper or sufficient need or justification for a blanket procedure of

strip and/or visual cavity searching the members of Class III.

132.    By instituting and continuing a blanket procedure of strip searching the members of Class III,  Defendants have subjected Plaintiffs YOUNG and JONES and the members of Class III to an unreasonable search in violation of the Fourth Amendment.

133.    By instituting and continuing a blanket procedure of strip searching the members of Class III, Defendants have subjected Plaintiffs YOUNG and JONES and the members of Class III to punishment in violation of the Fourteenth Amendment.

134.    Policies, customs and/or widespread practices of Defendant COOK COUNTY, and/or the express decisions of its policymaker(s) are the moving force behind these violations. Defendants SHEAHAN, BAIRD, GODINEZ and KURTOVICH instituted, condoned, and/or failed in their supervisory responsibility to have terminated the procedure.

WHEREFORE, Named Plaintiffs YOUNG and JONES respectfully demand judgment on behalf of themselves and the class, awarding costs, fees, attorneys fees, actual damages, and any other appropriate relief against Defendants COOK COUNTY, SHEAHAN, BAIRD, GODINEZ and KURTOVICH.  Named Plaintiffs YOUNG and JONES further demand an award of punitive damages on behalf of themselves and the class against Defendants SHEAHAN, BAIRD, GODINEZ and KURTOVICH.

### Count VI - Class IV's claims pursuant to 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments

135.    Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

136.    There is no proper or sufficient need or justification for a blanket procedure of performing visual cavity searches on the members of Class IV.

137.     By instituting and continuing a blanket procedure of visual cavity searching the members of Class IV,  Defendants have subjected Plaintiffs YOUNG and JONES and the members of Class IV to an unreasonable search in violation of the Fourth Amendment.

138.      By instituting and continuing a blanket procedure of visual cavity searching the members of Class IV, Defendants have subjected Plaintiffs YOUNG and JONES and the members of Class IV to punishment in violation of the Fourteenth Amendment.

139.     Policies, customs and/or widespread practices of Defendant COOK COUNTY, and/or the express decisions of its policymaker(s) are the moving force behind these violations. Defendants SHEAHAN, BAIRD, GODINEZ and KURTOVICH instituted, condoned, and/or failed in their supervisory responsibility to have terminated the procedure.

WHEREFORE, Named Plaintiffs YOUNG and JONES respectfully demand judgment on behalf of themselves and the class, awarding costs, fees, attorneys fees, actual damages, and any other appropriate relief against Defendants COOK COUNTY, SHEAHAN, BAIRD, GODINEZ and KURTOVICH.  Named Plaintiffs YOUNG and JONES further demands an award of punitive damages on behalf of themselves and the class against Defendants SHEAHAN, BAIRD, GODINEZ and KURTOVICH.

**Count VII - State Law Claim: Respondeat Superior**

140.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

141.     All of the above employees of Defendant Cook County subjected Named Plaintiffs JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK, and the members of the Classes I-IV to the procedures described above, all of which procedures violate Illinois law.

142.    These employees' actions and omissions were taken within the scope of their employment for Cook County .

143.    Plaintiffs YOUNG, JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK and the members of the Classes I-IV have suffered damages as a result.

WHEREFORE, Named Plaintiffs  JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK respectfully demand judgment on behalf of themselves and the Class Members, awarding costs, fees, attorneys fees, actual damages, and any other appropriate relief against Defendant COOK COUNTY.

## Count VIII - State Law Claim: Indemnification

144.    Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

145.    By all of the above Defendants SHEAHAN, BAIRD, GODINEZ, KURTOVICH, SCOTT, MARTIN, ROTHSTEIN, WINSHIP, BERSKY, FAGUS and/or other as yet unidentified Cook County employees subjected Named Plaintiffs JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, FISHER, and HYTREK and the members of the Classes I-IV to the procedures described above.

146.     These persons' actions and omissions were taken within the scope of their employment for Cook County.

147.    Defendant COOK COUNTY is therefore required to indemnify an judgment awarded in this case against Defendants SHEAHAN, BAIRD, GODINEZ, KURTOVICH, SCOTT, MARTIN, ROTHSTEIN, WINSHIP, BERSKY, FAGUS and/or other as yet unidentified Cook County employees.

WHEREFORE,  Named Plaintiffs JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK respectfully demand judgment on behalf of themselves and the Class Members, awarding costs, fees, attorneys fees, actual damages, and any other appropriate relief against Defendant COOK COUNTY.

## Jury Demand

Named Plaintiffs YOUNG, JOHNSON, JONES, GORMAN, LAMOUR, MERCADO, GRAY, LIPTAK, and HYTREK respectfully demand judgment trial by jury on behalf of themselves and the Class Members on all issues so triable.


RESPECTFULLY SUBMITTED,


/s/ Michael Kanovitz
Attorneys for Plaintiffs

Arthur Loevy
Michael Kanovitz
Jon Loevy
Samantha Liskow
Roshna Bala Keen
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
(312) 243-5900