IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIM YOUNG, RONALD JOHNSON, and WILLIAM JONES, LEE MERCADO, GERRAD LAMOUR, ALLEN GORMAN, CARL GRAY, MATTHEW LIPTAK, and BRADLEY HYTREK, on behalf of themselves and a class of others similarly situated, ) ) ) ) ) ) ) | |
| Plaintiffs, ) | |
| v. ) | No: 06-CV-552 |
| ) | |
| COUNTY OF COOK, et al., ) | JUDGE KENNELLY |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |

## PLAINTIFFS' MOTION FOR SANCTIONS

Named Plaintiffs, on behalf of themselves and the certified class, by and through their counsel, respectfully request that this Court impose sanctions on Defendant in light of its discovery violations. In support thereof, Plaintiffs state as follows:

1. As is explained below, Plaintiffs recently became aware that Defendant has violated its discovery obligations on several topics. See, e.g., Plaintiffs' Responses to Defendants' Motions in Limine at 12 n.2 (Defendant failed to produce a 2008 CRIPA letter and associated documents) and 13 (Defendant failed to produce a 2007 revision to its strip search policy), Dckt. 364. With trial rapidly approaching and the ability to conduct discovery and expert analysis long past, Plaintiffs have been prejudiced.

2. Relevant to the present motion, Plaintiff has had an outstanding request for "[a]ll grievances filed by a detainee regarding strip searching since January 1, 2002." Defendants' Responses to Plaintiffs' 2/2/07 Request for Production No. 14; Exh. A. During discovery,

Defendant produced only a handful of grievances, none of which seemed particularly relevant to the case (some of them dealt with intake strip searches, while many of them dealt with complaints about searches in the housing divisions). Id.

3. Plaintiffs do not know whether that production was complete at the time that it was made. However, it is now certain that Defendant thereafter failed to produce more 250 pages of grievances covering the topic of strip searches during the relevant time period.

4. Plaintiffs uncovered this failure to produce while in the throes of preparing for trial. On June 23, 2009, Defendant sent its list of exhibits that it intended to use at trial. See 6/23/09 e-mail and list, Exh. B. On that list, Defendant included a 2008 report from the John Howard Association, the CCJ court monitor, that it had not previously produced. Plaintiffs obtained the report from the internet and found that there was also a more recent report, including a portion for 2009 (both available at http://www.john-howard.org/publicationresources.html).

5. Neither report addressed the topic of strip searches but they both contained an addendum listing the top grievances received during the year by category. See 2008 Report at 103, Exh. C; 2009 Report at 90, Exh. D. For 2008, the addendum indicated that there were 54 strip search grievances; the 2009 report indicated that through the first quarter there were at least 31 such grievances. Id. Plaintiffs promptly wrote to Defendant, demanding to see these grievances. See 7/9/09 Letter, Exh. E.

6. Defendant responded on July 15, 2009, producing more than 250 pages of grievances, all of which concern strip searching and all of which fall within the relevant time period. The earliest of these grievances is dated December 6, 2007 (QH 5625), Exhibit F.

7.      While juggling all of the other tasks necessary to prepare for the forthcoming trial, Plaintiffs have now reviewed the documents (although, given the time constraints, not in the searching manner we would like). It is clear that most if not all of the grievances are probative of the issues in this trial and many concern highly relevant topics, such as:

●  Many suggest that the men were still being strip searched in the presence of dozens of other detainees without dividers. See, e.g., QH 5611-12 (when going through intake in May of 2007 "I was subjected to a strip search in the presence of dozens of other detainees"), Group Exhibit G; 5617-18, id. (January 2008 grievance that when strip searched during intake and at the division, detainee was "…standing next to various individuals while naked and having to bend over while officers look into my anus and to squat as well."); 5622, id. (same) ("haven (sic) to bend over while officers look between the crack of my anus").

●  The fact that the problems are of long standing. See, e.g., QH 5738, Group Exh. G ("strip searched with about 350 other detainees during intake on August 28, 2005).

●  Some direct evidence of deliberate indifference by the policymaker. See, e.g., QH 5644, Group Exh. G (demoralizing strip searches, spoke to Director Godinez but nothing changes).

●  Discrepancies between the male and female search process. See, e.g., QH 5628, Group Exh. G ("public strip searching of men violates our rights under equal protection");

●  Failure of the system to investigate the grievances. See, e.g., QH 5619-20, 5670-71, Group Exh. G.

8.      Plaintiffs have been prejudiced by the extraordinarily belated disclosure of this information in ways that we are only beginning to appreciate, and which will likely not be clear until after all the dust has settled after the trial. Undoubtedly, the people filing these grievances could have assisted Plaintiffs in proving their case in numerous ways.

9.      The area of prejudice standing out as particularly unfair relates to Plaintiffs' ability to prove notice to the policymaker. Defendant is preparing to put on a defense that it

3

lacked notice that there were any problems with the strip searches due to a lack of grievances. See Defendant's Response to Plaintiff's Motion *in Limine* No. 3, Dckt. 367, at 3. To meet this contention, Plaintiffs should have been permitted to conduct *searching* discovery into these grievances and employ the assistance of experts.

10. As things stand now, Plaintiffs have no information on how these grievances were handled, who adjudicated them, why they were not sustained, the patterns that emerge, etc. Indeed, every one of the persons who filed these grievances is a potential witness. We have been deprived of the opportunity to conduct that discovery by the running out of the clock.

11. Plaintiffs' ability to use the documents at trial is no salve for the lack of thorough discovery about the documents. These grievances are not eloquently written, and we have had no opportunity to interview their authors nor make them witnesses for the case. Similarly, we have been deprived of the opportunity to consult an expert who could opine on how these grievances would have triggered notice to a jail administrator of the specific problems Plaintiffs have identified. Or at least, that the grievances are sufficient to have required the jail administrators to investigate further to see what was happening during the strip searches. Nor can we prove what the administrators would have discovered had they investigated or talked with these detainees.

12. Similarly, we do not have an expert who can criticize the nature of the grievance system, given how these grievances were handled (and a broken grievance system in and of itself could be a basis for policymaker liability).

13. Perhaps worse, we have no idea what Defendant will contend at trial about these grievances: if they are not insufficient for notice, why not? What justification does the

Defendant have for not investigating them further? Or did Defendant investigate further, and what did it learn?

14. Indeed, we do not even know if this latest production even covers all of the relevant grievances. As the Court may recall, shortly after the close of fact discovery, Plaintiffs uncovered a lawsuit against Defendant filed by Mr. George Jenkins, to which was attached a strip search grievance that Defendant had not produced and which was directly on point for Plaintiffs' claims. See Plaintiffs' Motion to Reopen Fact Discovery, Dckt. 136. Defendant responded and represented that Mr. Jenkins had not actually submitted the grievance (claiming essentially that he was lying). It also represented that "Defendants have produced all relevant grievances requested by Plaintiff within the timeframe sought." Defs' Supp. Resp. at 2, Dckt. 147. That seems unlikely at the present time, and Plaintiffs have been denied a thorough opportunity to check.

15. Under Fed. R. Civ. P. 37, the Court should impose a reasonable sanction, one which protects Plaintiffs from any possibility of prejudice from Defendant's discovery violation. See Melendez v. Illinois Bell Telephone Co., 79 F.3d 661, 671 (7th Cir. 1996) ("Sanctions are proper upon a finding of wilfulness, bad faith, or fault on the part of the noncomplying litigant."); id. at 672 ("[W]e do not require district courts to select the 'least drastic' or 'most reasonable' sanction.").[1] Here, the prejudice lays in the fact that Plaintiffs have been severely

---

[1] Given how recently this disclosure was made, we have not had the ability to develop evidence as to whether the omission was willful or not. Clearly, however, Defendant is at fault in failing to disclose grievances expressly called for by Plaintiff's discovery requests for such a long period of time. This is particularly true in light of Plaintiff's prior motion to reopen discovery. Moreover, there are numerous other items that the parties are still discussing which we now realize have not been produced, evincing a disturbing pattern. Plaintiff will be prepared to discuss this issue further at the hearing on this motion.

5

hampered in marshaling the factual and expert evidence with which to show that these grievances (and any others that may exist) sufficiently demonstrate notice to the policymakers.

16. The cure for that prejudice is to prevent Defendant from arguing that it did not have notice of any widespread practices that Plaintiffs are able to establish by the evidence at trial. See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 709 (1982) (court properly took facts establishing minimum contacts with state as established as discovery sanction given that "[b]ecause of petitioners' failure to comply with the discovery orders, CBG was unable to establish the full extent of the contacts between petitioners and Pennsylvania, the critical issue in proving personal jurisdiction."); Monaghan v. SZS 33 Associates, L.P.,148 F.R.D. 500, 511 (S.D.N.Y. 1993) ("The late production of the Personnel Log and other documents has hampered the Plaintiffs' ability to locate witnesses, and crafting a sanction that will adequately correct this harm to the Plaintiffs is difficult. The prejudice the Plaintiffs have incurred on this score is real, but it is not significant enough to justify striking SZS's pleadings and entering a default judgment. However, because these witnesses would testify regarding the condition of property and SZS's efforts to provide security on it, an appropriate initial sanction is that of precluding SZS from raising as a defense the issue that it was not on notice regarding the condition of the Premises or the criminal activities taking place thereon.").

17. To be clear, Plaintiff is not seeking a sanction that the widespread practices in fact exist, even though this would be a reasonable sanction given that the grievances also could help prove the actual practices. Rather, the sanction Plaintiffs seek preserves Defendant's ability to argue on the merits that the widespread practices do not in fact exist. In other words, it would

not be taken as established that the Defendant in fact had notice of the widespread practices but, rather, Defendant would be only limitedly barred from making any defense that it lacked notice of any widespread practice that the jury believes has been proven. This can be accomplished through an appropriate jury instruction adjusting the definition of an "official policy" as it applies to notice of a widespread practice.

18. This is a firm sanction but a narrowly tailored one. One of the sides is undoubtedly going to be prejudiced by the belated disclosure. That prejudice should fall on the side that caused it.

WHEREFORE, Defendant should be barred from contending that it did not have notice of any proven widespread practice.

RESPECTFULLY SUBMITTED,

/s/ Michael Kanovitz
Attorneys for Plaintiffs

Arthur Loevy
Michael Kanovitz
Jon Loevy
Samantha Liskow
Roshna Bala Keen
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
(312) 243-5900