# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KIM YOUNG, et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 06 C 552 |
| COUNTY OF COOK, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case is set for trial on August 3, 2009 regarding the claims on which the Court did not grant summary judgment, specifically, claims by one of the two plaintiff classes ("Class 1") regarding the conduct of strip / body cavity searches upon incoming male detainees at the Cook County Jail from February 2007 through the present. The propriety of strip searches as such is not challenged via these claims. Rather, the remaining claims concern equal protection – the allegedly unjustified differential treatment of male detainees as compared with female detainees; the Fourth Amendment – regarding the manner in which Jail personnel conducted the searches; and the Eighth Amendment and the Due Process Clause – whether the searches, given how they were conducted, amounted to the improper infliction of punishment upon pretrial detainees.

The Court rules as follows on the parties' motions *in limine*.

**Defendants' motions**

1. The Court grants defendants' motion to bar plaintiffs from calling at trial class member witnesses who were noticed for deposition but did not appear. The Court made it clear to plaintiffs in early June that it would preclude from testifying any class member witness who did not appear for deposition. Plaintiffs had ample opportunity to secure their proposed witnesses' presence at a deposition prior to trial.

2. The Court denies defendants' motion to bar plaintiffs from calling in their case in chief any class members who are not named class representatives. Defendants cite no basis in law for the proposition that an unnamed class member should not be permitted to testify at the trial of a class action. There is likewise no basis for the proposition that unnamed class members are cumulative witnesses as a matter of law or that the purported "atypicality" of their testimony is a basis under the Federal Rules of Evidence or otherwise to bar them from testifying. The Court reserves the right pursuant to Rule 403 to prevent the presentation of unduly cumulative evidence as the trial develops.

3. Both sides in the case agree that the trial concerns strip / body cavity search practices from February 2007 through the present. Defendants have moved on relevance grounds to bar witnesses who were admitted into the Cook County Jail prior to that date from testifying. The Court wishes to hear defendants' response to plaintiffs' argument that testimony regarding the Jail's practice at earlier dates is relevant to show defendants' allegedly deliberate indifference to conditions in February 2007 and thereafter.

4. Defendants argue that a correctional officer's use of offensive language

does not violate the Constitution and thus any evidence of that should be excluded; conducting strip searches of males in the presence of female officers does not violate the Constitution and thus any evidence of that should be excluded; and the presence of offensive smells during a strip search does not violate the Constitution and thus any evidence of that should be excluded as well. These requests reflect a rather obvious misunderstanding of the plaintiffs' claims and the applicable law. The determination of the constitutionality of defendants' alleged practices is based on the totality of the circumstances. It is inappropriate to compartmentalize each bit of plaintiffs' evidence and view it in isolation. The Court therefore denies defendants' motion to preclude this evidence (motion 4A, B & D), leaving for later determination the extent to which the legal points argued by defendants should be addressed in jury instructions.

The Court also denies motion 4C, in which defendants seeks to preclude evidence regarding Cook County Jail internal regulations. Just last week, in *Mays v. Springborn*, No. 05-3630, 2009 WL 2046484 (7th Cir. July 16, 2009), a case involving (among other things) strip searches in a prison setting, the Seventh Circuit stated that such evidence should be admitted: "although violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass." *Id.* at *5 (internal citation omitted). Such evidence is relevant to, at a minimum, plaintiffs' Eighth Amendment claim.

5. The Court wishes to hear further argument at the pretrial conference on defendants' motion to bar evidence of purportedly "unrelated incidents" of claimed abuse. The Court needs to have a better sense of exactly what plaintiffs intend to offer

in this regard and to get defendants' reply to the arguments made at pages 5-7 of plaintiffs' response to defendants' motion.

6. The Court denies without prejudice defendants' motion to bar any use of pleadings and discovery responses (motion 6A & B). If plaintiffs attempt to use such documents at trial in a manner defendants believe is inappropriate under the Rules of Evidence, they should renew their objection at that time.

The Court wishes to hear further argument on defendants' motion to bar plaintiffs from using complaints and court filings from other lawsuits as evidence of notice, deliberate indifference, and other matters (motion 6C). Specifically, defendants should be prepared to address at the pretrial conference the points made in plaintiffs' response at page 8.

The Court denies defendants' request to bar plaintiffs from using the American Correctional Association's standards (part of motion 6D). A recently-produced January 2007 revision to the Jail's strip search policy cites certain of those standards. Because, however, the Court is elsewhere barring defendants from offering, via their expert Norman Carlson or otherwise, evidence that the ACA purportedly approved or did not object to the Jail's practices, plaintiffs may wish to rethink their intention to offer the ACA standards.

Defendants also ask the Court, on hearsay grounds, to bar plaintiffs from offering a report regarding the Jail issued by the U.S. Department of Justice pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997a. The report references the Jail's strip search practices. It appears to the Court from plaintiffs' response that plaintiffs can satisfy the requirements of Federal Rule of Evidence 803(8) with regard to

4

the report.  Defendants should be prepared to address this point at the pretrial conference.

7. Defendants ask the Court to bar what they contend is inadmissible evidence of subsequent remedial measures, specifically, evidence that the Jail's use of partitions during strip searches of male detainees resulted from the settlement of *Thompson v. Cook County*, Case No. 03 C 7172 (N.D. Ill.).  Defendants also ask the Court to bar evidence that partitions were first used in February 2007.  The Court has a hard time seeing how the latter fact, by itself, is inadmissible, and defendants make no viable argument supporting exclusion of that fact.  The Court denies their motion to that extent.  As for the reference to the settlement of the *Thompson* case, plaintiffs contend that defendants paid only lip service to their agreement to use partitions.  They argue that the fact that defendants agreed to the practice as part of the settlement of a lawsuit supports the proposition that they agreed to it only grudgingly and as a result did not ensure compliance with the agreement.  The Court wishes to hear defendants' response to that argument.

The Court also requires further argument regarding defendants' position concerning evidence of the post-lawsuit introduction of the use of body scanning machines in lieu of strip searches.  Defendants should be prepared to address the points made at pages 14-15 of plaintiffs' response.

8. Defendants' motion to bar evidence of other lawsuits appears to duplicate motion 6C, on which the Court has asked to hear further argument.

9. The Court grants defendants' motion to exclude an April 2001 Chicago Tribune editorial regarding strip searches of women detainees and former Sheriff

Michael Sheahan's response to the editorial. The probative value of this evidence is significantly outweighed by its unfairly prejudicial effect.

10. Defendants ask the Court to bar plaintiffs from using affidavits prepared by around 500 class members who will not testify at trial and from using a summary of those affidavits. The affidavits, all of which were prepared well after the case was filed, are undeniably hearsay and are thus inadmissible as evidence in chief. Plaintiffs argue that the claims being tried concern the constitutionality of defendants' practices through the present date and that the affidavits are admissible to show that defendants were on notice of complaints regarding their strip / body cavity search practices. The Court has a hard time imagining that there is a serious issue regarding such notice at any date after this lawsuit was filed in 2006. If defendants make an issue of that at trial, the Court will entertain a request to admit the affidavits or a summary of them to rebut defendants' contention in this regard.

Plaintiffs also argue that the affidavits may be used during the testimony of their "correctional practices" expert and to cross examine defendant's expert. The Court will not preclude plaintiffs' expert from rendering opinions in reliance in part on the affidavits – assuming an adequate foundation is laid under Rule 703 for the expert's reliance – but that does not, by itself, permit plaintiffs to communicate the affidavits' contents to the jury via their expert. *See* Fed. R. Evid. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."). Though the Court will not preclude plaintiffs from eliciting on direct examination the fact that

their expert relied upon affidavits from detainees, plaintiffs have not, at this point, made the necessary showing under Rule 703 to admit the contents of those affidavits during the direct examination of their expert. Whether plaintiffs may elicit those contents on redirect may depend, at least in part, on defendants' cross-examination of the expert. Plaintiffs should ask for a sidebar prior to their redirect if they believe defendants have opened the door. The Court deals elsewhere with plaintiffs' request to cross-examine of defendants' expert regarding the contents of the affidavits.

11. In response to defendants' request to bar previously undisclosed witnesses, plaintiffs agree that they will use no such witnesses in their case in chief.

12. Defendants' request to "bar any speculation or hearsay by class witnesses" is far too vague to be granted as a motion *in limine*. Defendants should make the necessary objections during trial.

13. Defendants' motion to admit past convictions and prior bad acts of plaintiffs' witnesses is denied, without prejudice. Defendants provide no specifics in their motion. If defendants wish to offer a prior conviction or bad act of a witness that is not dealt with elsewhere in the Court's ruling, they will be required to raise any such issues at a sidebar before the particular witness takes the stand to testify.

### Plaintiffs' motions

1. The Court denies plaintiffs' motion to bar relitigation of certain matters. The Court does not take issue with the fact that matters it ruled upon on summary judgment or otherwise are now the law of the case and not subject to relitigation, but it does not see anything in particular to be gained by determining before trial that the particular facts cited by plaintiffs are no longer subject to dispute.

7

2. Plaintiffs have moved to bar argument or evidence about specific instances of finding contraband, arguing that is not a relevant issue on the claims remaining for trial. The Court wishes to hear at the pretrial conference plaintiffs' reply to the arguments made by defendants at pages 3-4 of their response brief.

3. Plaintiffs have moved to bar evidence or argument regarding witnesses' and class members' non-filing of internal grievances regarding strip / body cavity searches. Introducing evidence of a witness's failure to complain about allegedly wrongful conduct is an appropriate means to attempt to impeach the witness. The Court therefore denies plaintiffs' motion to the extent they asks the Court to bar defendants from doing that. This likely will entitle plaintiffs, as they suggest in their response, to offer evidence regarding the availability and witnesses' awareness of the grievance system, but that detour, if that is what it is, is not a sufficient basis under Rule 403 to bar defendants from this line of cross examination.

The issue of exhaustion of remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), is another matter. The Seventh Circuit has recently made it clear that non-exhaustion is an issue for the court, not the jury, and that it is typically an issue that a defendant can and should (and perhaps must) take up at an early stage of the litigation – which defendants did not do in this case. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The Court also agrees with plaintiffs that in the class action setting, the exhaustion requirement is satisfied if one class member exhausted internal Jail remedies. *See Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004); *Lewis v. Washington*, 265 F. Supp. 2d 939, 942-43 (N.D. Ill. 2003); *see also, Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 919 (7th Cir. 1976) (Title VII class action), *aff'd sub*

*nom. United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977). If defendants actually intend to press an exhaustion defense at this late date, they must so advise the Court in writing by the close of business on July 27, 2009, including authority supporting the current viability of this defense in view of the fact that it is was not the subject of a dispositive motion (the time for which long ago expired) and is being pressed for the first time on the eve of trial. Plaintiffs must then advise the Court by the close of business on July 28, 2009 regarding which exhausted grievance(s) they intend to offer to satisfy any exhaustion requirement, including authority regarding whether defendants have forfeited the defense by failing to bring it to the Court's attention earlier. The Court will resolve the matter at the pretrial conference or thereafter.

    4.    The Court denies plaintiffs' motion to bar testimony that weapons could be made from the dividers and that prisoners attempted to tamper with them. Defendants will have to lay a proper foundation for such testimony (personal knowledge, non-speculativeness, etc.), but if they can do so, it is relevant and not unfairly prejudicial or confusing.

    5.    The Court grants plaintiffs' motion to bar evidence or argument regarding probable cause or bond hearings that take place in state court before a detainee is brought to the Jail. Defendants' argument that such evidence is somehow relevant is strained; they articulate no basis upon which this evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even had defendants done so, this evidence would present a likelihood of jury confusion that would far outweigh any limited probative value it might have. *See* Fed.

R. Evid. 403. There is a significant likelihood that a jury would improperly infer that the fact that a detainee was committed to custody by a court rendered appropriate the Jail's treatment of the detainee.

6. The Court grants plaintiffs' motion to bar evidence and argument about the *Duran* consent degree, any oversight of strip searches by the court-appointed monitor in the *Duran* case, accreditation of the Jail by the American Correctional Association, and inspections by the IDOC. Faced with an argument in which plaintiffs squarely argued that none of these persons or agencies reviewed the strip / body cavity search methods as practiced by the Jail that are at issue in this case, defendants made no attempt to argue the contrary proposition, much less describe the evidentiary foundation for any such contention. The evidence is therefore irrelevant. Even if this evidence had some probative value – which is difficult to imagine – it would be far outweighed by the unfair prejudice and potential for jury confusion that would result from its admission.

7. Plaintiffs have moved to bar evidence regarding the particular charges witnesses were facing at the time they were strip searched at the Jail. They argue that because the claims that being tried in this case assume that a strip search may be done and challenge only the manner in which such searches are conducted and the differential treatment of women and men, the charges the witnesses were facing at the time of the search are irrelevant. Defendants argue generally that the nature of the charges bears on "the reasonableness of the search," Response at 8, but they do not elaborate or explain. The Court will give defendants one more opportunity to do so and will give plaintiffs an opportunity to respond. Both sides should be prepared to address

this point at the pretrial conference.

The Court notes that if it ends up excluding evidence regarding the charges the witnesses faced, plaintiffs will be barred from eliciting any claims of wrongful detention or arrest.

Defendants also argue that if a witness had been sleep deprived or was intoxicated at the time of the incarceration, that could bear on the believability of the witness' testimony regarding the circumstances of the search he experienced. The Court deals with this issue later, with regard to plaintiffs' motion *in limine* 11.

8. Plaintiffs seek to bar defendants from introducing evidence regarding prior bad acts, arrests, and inadmissible convictions of plaintiffs' witnesses. Defendants respond, in part, that evidence of convictions for traffic offenses and other crimes not reaching Rule 609's threshold are admissible under Rule 608(b) as prior acts bearing on credibility. The only example they give is that of a witness who has repeatedly driven on a suspended driver's license and who thus "admittedly disregard[s] the law daily." Response at 8. The contention that such acts are admissible under Rule 608(b) is frivolous; such acts are in no way "probative or truthfulness or untruthfulness," Fed. R. Evid. 608(b), and even if a cogent argument to the contrary could be made, the Court would exclude such evidence as grossly unfairly prejudicial in a way that greatly outweighs its minuscule probative value. *See* Fed. R. Evid. 403. The same is true of arrests that have not resulted in convictions.

The only convictions that the Court will consider admitting are those that qualify under Federal Rule of Evidence 609(a)(1) & (2) – felony convictions, subject to a Rule 403 analysis, and convictions involving dishonesty or false statement. But because

defendants have identified no such convictions other than one relating to Tommie Daniels, they must, before they may refer to anything of the sort in the presence of the jury, make a written proffer regarding the particular conviction they intend to offer as to a particular witness so that the matter may be taken up outside the jury's presence before the witness takes the stand to testify.

Defendants also argue that the fact that witnesses may be familiar with search procedures and may have made multiple trips to the jail is relevant. Even if so, the admission of such evidence has barely any probative value at all – defendants make only a passing attempt to argue otherwise, *see* Response at 9 – and the evidence would be unfairly prejudicial to plaintiffs in a way that far outweighs that limited probative value.

9. Plaintiffs seek to bar certain opinions by defendants' expert witness Norman Carlson.

a. Carlson has rendered an opinion that strip searches of detainees without privacy dividers affords a reasonable degree of privacy. The Court ruled otherwise on summary judgment with regard to the Jail's conduct of such searches up until February 2007. That is why the claims remaining for trial include only the period from February 2007 (when dividers were installed) to the present. It would be inappropriate for defendants to seek to introduce through a witness a contention that is contrary to a ruling that the Court has made. The Court also notes that plaintiffs argue that Carlson premised his views in this regard on an unsupported rejection of the believability of sworn affidavits by detainees, and that in doing so he has used improper methodology. Defendants have not responded to this argument and have thus forfeited

the point in any event.  The Court assumes that its rulings renders moot plaintiffs' argument that they should be able to introduce the contents of the affidavits in cross-examining Carlson (*see* Defs.' Motion ¶ 10).

    b.  Carlson has opined that certain language in the Illinois Administrative Code requires jails to conduct strip searches of every detainee entering a jail.  Plaintiffs dispute Carlson's reading of the regulation.  The Court excludes this opinion.  As noted earlier, the claims remaining for trial assume a strip search may be done but challenge the manner in which the search is done.  Carlson's opinion regarding whether the regulation requires a strip search is thus irrelevant and, in addition, would be unduly confusing to the jury.  The Court further notes that defendants have forfeited any argument regarding the relevance of this evidence by failing to explain its relevance despite being faced with an argument by plaintiffs that unambiguously put relevance in issue.  *See* Pls.' Motion at 14.

    c.  The Court also excludes Carlson from referring to or relying upon the absence of any mention of strip searches in reports by the *Duran* court-appointed monitor, for the reasons previously discussed with regard to plaintiffs' motion 6.

  10.  The Court denies plaintiffs' motion to bar testimony or argument that men and women face substantively different charges or present different security risks that justify differential treatment.  The points that plaintiffs make in this motion are matters for cross-examination and argument (and, perhaps, for a jury instruction regarding speculation and reasonable inferences), not a basis to exclude such evidence.  Defendants will, of course, be required to lay a proper foundation for any such evidence.  If they fail to do so, plaintiffs should object when the evidence is offered, and

the Court will make a ruling at that time.

The Court also rejects plaintiffs' argument that such evidence should be excluded due to the lack of timely pretrial disclosure under Federal Rule of Civil Procedure 26(a)(2). That rule does not require pretrial disclosure of lay witness opinion testimony admissible under Federal Rule of Evidence 701, which is what is at issue here – though the Court again notes that defendants will be required to lay the foundation under Rule 701(a), and if they fail to do so, the Court will not hesitate to exclude the testimony.

11. Plaintiffs have moved to bar introduction of evidence regarding a witness's use of drugs or alcohol. Such evidence may be relevant to show a witness's possible inability to recollect clearly or relate accurately what he observed. But the Seventh Circuit has recently made it clear that "there is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony. . . . A court must, therefore, be chary in admitting such evidence when it is offered for the sole purpose of making a general character attack." *Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008). Because defendants make no attempt to identify which witnesses they propose to cross-examine on this basis or what good-faith basis they have to do so, the Court will require them to make a proffer of such evidence outside the jury's presence before any such witness takes the stand to testify. If the Court permits such evidence it will entertain any request by plaintiffs to give the jury a cautionary instruction.

12. The Court denies without prejudice plaintiffs' motion to bar documents about class members that are claimed to have been untimely disclosed, because

plaintiffs have provided no specifics. The Court rejects, however, defendants' argument that Federal Rule of Civil Procedure 26(a)(3)(A) somehow permits late production of documents that bear only on impeachment. Careful reading of that Rule makes it readily apparent that it concerns disclosure of a party's intention to use exhibits at trial – essentially, the equivalent of this District's pretrial order requirements – not the timing for a party's production of documents that were requested or otherwise required to be produced during discovery.

13. The Court grants plaintiffs' motion to bar defendants from making arguments about budgetary considerations or taxes or otherwise appealing to the jury's pecuniary interests. Defendants offer no authority that the standard for the constitutional violations claimed in this case, or the obligation to comply with the Constitution, depends upon a government agency's financial condition.

14. The Court grants, pursuant to Rule 403, plaintiffs' motion to bar reference to tattoos, body pierces, and other body markings. The Court will entertain reconsideration if defendants make a showing, outside the presence of the jury before a particular witness takes the stand to testify, along the lines proposed by plaintiffs at the top of page 20 of their motion (i.e., identification of the particular marking on the particular witness and a showing of its relevance sufficient to overcome its potential for unfair prejudice).

15. The Court grants, pursuant to Rule 403, plaintiffs' motion to bar reference to military practices. The probative value of this evidence – to show, supposedly, that certain plaintiffs' witnesses experienced similar abuse when in the military – is minuscule at best, and it is far outweighed by the potential for jury confusion.

16. Plaintiffs have moved to bar defendants from calling class members whom plaintiffs do not call at trial; defendants have listed some such persons as "may call" witnesses. The Court will require further argument on this point, including giving plaintiffs an opportunity to respond to the argument made at pages 14-15 of defendant's response. The Court also will inquire of defendants whether they made disclosures sufficient to comply with their obligations under Rule 26(a)(1) regarding these witnesses. The Court notes that to the extent it permits defendants to call any such witness, it will not permit them to do so for the purpose of putting in the witness's convictions or prior bad acts and will entertain barring defendants, pursuant to Rule 403, from attempting to impeach "their" witnesses with prior convictions or bad acts. The Court also directs defendants to be prepared to address at the pretrial conference how they propose to introduce into evidence the alleged incident involving Bennie Ellison, which appears to be the subject of pending criminal charges that likely would lead Ellison to claim his privilege against self-incrimination.

17. Plaintiffs' motion to bar evidence or argument about damages is granted without objection; this is a liability-only trial.

18. The Court denies plaintiffs' motion to bar reference to contacts by witnesses with counsel; this is an appropriate topic for examination and argument.

**Conclusion**

For the reasons stated above, the Court grants plaintiffs' and defendants' motions *in limine* in part, denies them in part, and defers them in part for further argument [docket nos. 357, 359, 364]. The Court terminates, based upon previous rulings in open court, defendants' motion to bar untimely disclosed class

16

representatives or continue the trial date [docket no. 336] and terminates as moot defendants' motion for miscellaneous relief [docket no. 328].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 27, 2009